UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re: | |
| **DB TRANSPORT LLC,** | Case No. 25-51307-KMS |
| Debtor. | Chapter 7 |

**JOINT MOTION FOR ENTRY OF AGREED ORDER FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ABANDONMENT OF PROPERTY OF THE ESTATE**

Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group ("Eastern Funding"), Debtor DB Transport, LLC (the "Debtor"), and the Chapter 7 Trustee (the "Trustee") file this *Joint Motion for Entry of Agreed Order for Relief from the Automatic Stay and for Abandonment of Property of the Estate* (the "Motion") under Fed. R. Bankr. P. 4001(d), requesting that this Court approve and enter the proposed Agreed Order (the "Agreed Order," attached as Exhibit A), terminating the automatic stay and abandoning collateral from the estate, as follows:

1. On January 11, 2024, Eastern Funding and the Debtor entered into a *Master Promissory Note and Security Agreement* (the "Note," attached as Exhibit B) under which Eastern Funding financed the Debtor's purchase of a 2024 Freightliner Model M-2 106 VIN No. 1FVACWFC3RHUT9955 with a Jerr-Dan 22' Carrier Serial 0220029934 (the "Collateral") for a term of 71 months with monthly payments of $2,383.00 (plus taxes and fees).

2. Under the terms of the Note, Eastern Funding took a security interest in the Collateral and perfected its interest by denoting its status as First Lien Holder on the title of the Freightliner, attached as Exhibit C.

3. The Debtor thereafter filed this bankruptcy case.

4. The filing of this bankruptcy case constituted an event of default under the Loan.

5. As of September 4, 2025, the total amount due under the Loan was:

|  |  |
|---:|:---|
| Principal: | $106,462.63 |
| Accrued Interest: | $2,794.99 |
| Late Charges: | $357.45 |
| Other Charges: | $370.00 |
| Prepayment Penalty Fee: | $4,258.50 |
| **Total:** | **$114,243.57** |

6. On information and belief, the value of the collateral is roughly $115,000.00.

7. Eastern Funding, the Debtor, and the Trustee are agreeable to termination of the automatic stay under 11 U.S.C. § 362 as to the Collateral, as well as agreeable to the abandonment of that Collateral from the estate, as set forth in the Agreed Order.

**For these reasons**, Eastern Funding, the Debtor, and the Trustee request that the Corut grant this Motion and enter the Agreed Order.

Dated: December 8, 2025

**EASTERN FUNDING, LLC D/B/A SPECIALTY VEHICLE AND EQUIPMENT FUNDING GROUP**

/s/Timothy J. Anzenberger
Timothy J. Anzenberger (MBN 103854)
Adams & Reese LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157
Telephone: 601.353.3234
Facsimile: 601.355.9707
tim.anzenberger@arlaw.com

**DB TRANSPORT LLC**

/s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr.
Rollins Law Firm
40 Northtown Drive, Suite 101
Jackson, MS 39211
Telephone: 601.202.5296
Facsimile: 601.500.5296
trollins@therollinsfirm.com

**CHAPTER 7 TRUSTEE**

/s/ G. Adam Sanford
G. Adam Sanford
McRaney Sanford Killebrew, PLLC
1 Stonegate Drive, Suite B
Brandon, MS 39042
Telephone: 601.924.5961
trustee@mcraneymcraney.com

## CERTIFICATE OF SERVICE

Service provided via Notice of Electronic Filing through the Court's Electronic Filing System on all parties signed up to receive such notices.

Dated: December 8, 2025　　　　　　　　/s/ Timothy J. Anzenberger
　　　　　　　　　　　　　　　　　　　Timothy J. Anzenberger

3

<u>EXHIBIT A</u>

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re:<br><br>**DB TRANSPORT LLC,**<br><br>Debtor. | Case No. 25-51307-KMS<br><br>Chapter 7 |

### AGREED ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND ABANDONING PROPERTY OF THE ESTATE

This matter came before the Court on the *Joint Motion for Entry of Agreed Order for Relief from the Automatic Stay and for the Abandonment of Property of the Estate* (the "Motion," Dkt. # 65), filed by Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group ("Eastern Funding"), Debtor DB Transport, LLC (the "Debtor"), and the Chapter 7 Trustee (the "Trustee"), requesting that the Court enter this Agreed Order under Fed. R. Bankr. P. 4001(d). The Court, being advised that Eastern Funding, the Debtor, and the Trustee agree to the relief set forth below, and being further advised that there have been no objections to entry of this Agreed Order by the objection deadline, finds the Motion well taken and should be granted as set forth below:

**IT IS THEREFORE ORDERED** that the Motion is granted.

**IT IS FURTHER ORDERED** that the automatic stay of 11 U.S.C. § 362 is hereby lifted, terminated, and annulled with respect to the Collateral, as that term is defined in the Motion, and that the Collateral is hereby abandoned from the estate.

**IT IS FURTHER ORDERED** that (i) the relief set forth herein shall be applicable to any later case filed by or against the Debtor under the Bankruptcy Code or upon the conversion of this case to any other chapter of the Bankruptcy Code; (ii) the Motion is deemed to have been sufficient to afford reasonable notice of the relief requested herein and opportunity to be heard on same; (iii) this Agreed Order shall immediately become final and effective upon entry; (iv) the fourteen day stay of execution under Fed. R. Bankr. P. 4001(a)(3) is hereby waived; and (v) this Agreed Order constitutes a final judgment as contemplated by the Federal Rules of Bankruptcy Procedure.

##END OF ORDER##

**PREPARED, AGREED TO, AND SUBMITTED BY:**

/s/Timothy J. Anzenberger
Timothy J. Anzenberger (MSB# 103854)
ADAMS & REESE LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157
Telephone: 601.353.3234
Facsimile: 601.355.9707
tim.anzenberger@arlaw.com
*Counsel to Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group*

**AGREED TO BY:**

/s/ Thomas C. Rollings, Jr.
Thomas C. Rollins, Jr.
ROLLINS LAW FIRM
40 Northtown Drive, Suite 101
Jackson, MS 39211
Telephone: 601.202.5296
Facsimile: 601.500.5296
trollins@therollinsfirm.com
*Counsel to DB Transport LLC*

/s/ G. Adam Sanford
G. Adam Sanford
MCRANEY SANFORD KILLEBREW, PLLC
1 Stonegate Drive, Suite B
Brandon, MS 39042
Telephone: 601.924.5961
trustee@mcraneymcraney.com
*Counsel to Chapter 7 Trustee*

DocuSign Envelope ID: F31B6B1C-CA1D-4DB5-BB75-DDC981DC5B5A

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

EXHIBIT B

# Cover Sheet
## Electronic Transmission of Loan Documents

**Date:** January 11, 2024

**Authorized by:** x _DocuSigned by: Donshekie Fredrick Barrett_
5ABC70C6046B47E...

signature of Donshekie Fredrick Barrett

**From:** **DB Transport LLC**
5043 Fairbury Way, D'Iberville MS 39540

**Send To:** Eastern Funding LLC d/b/a

**Specialty Vehicle and Equipment Funding Group**

by **EITHER** Email to documentquue@specialtyvehiclefunding.com
**OR** Fax to 6317532097

**Re:** Loan # ▉▉▉4001

| Place of Execution: Melville, NY | **MASTER PROMISSORY NOTE and SECURITY AGREEMENT** | Loan # 9114<br>Date: 1/10/2024 |
|---|---|---|

**FOR VALUE RECEIVED**, DB Transport LLC ("Maker"), with a principal place of business and notice address at 5043 Fairbury Way, D'Iberville MS 39540, promises to pay to the order of Eastern Funding LLC d/b/a **Specialty Vehicle and Equipment Funding Group, a subsidiary of Brookline Bank** ("Lender"), at **175 Broadhollow Road, Suite 120, Melville, NY 11747** or at such other place as may be designated in writing by Lender, the Loan Amount(s), plus interest thereon computed on the basis of a 360 day year, payable in accordance with the terms and conditions detailed on one or more Loan Schedules (each a "Loan Schedule") referencing this Master Promissory Note and Security Agreement . Each installment payment received by Lender pursuant to a Loan Schedule shall first be applied to the payment of interest on the respective principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Lender's discretion to that Loan Schedule or any other Loan Schedule. Lender shall not fund any Loan Schedule unless and until the applicable Collateral (defined below and specifically detailed on each Loan Schedule) is delivered to Maker. This Master Promissory Note and Security Agreement and all of the Loan Schedules referencing this Master Promissory Note and Security Agreement shall hereinafter be collectively referred to as this or the "Note".

**(1)** Payments If any payment or other amount due hereunder is not received by Lender within 10 days of its due date, a late charge of 5% of each payment so overdue may be charged by Lender to defray the expenses incident to processing such payment. Any such late charge shall not reduce or diminish Maker's obligation to pay per diem interest. Maker may prepay this Note in full (not in part) at any time by paying Lender an amount equal to: (A) all charges and fees then due and owing to Lender; (B) all payments of principal and interest due and owing to Lender to the date of prepayment; and, (C) a prepayment fee equal to 5% of the Note's then outstanding principal balance if the prepayment is made before the Note's first anniversary, declining by 1% annually until it reaches 2% (i.e., 5%, 4%, 3% 2% and 2% thereafter). "In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Lender shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above." If on two occasions within any 12 month period Maker's checks and/or Maker's authorized, automatic payments to Lender are not honored when presented in due course to the bank on which they are drawn, Lender shall be permitted to: (a) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (b) increase the annual interest rate then being charged by 0.5%. In addition to the 0.5% detailed in the preceding sentence, if Maker withdraws Maker's authorization for Lender to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Lender shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(2)** Grant of Security Interest.  In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due or to become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker hereby grants to Lender, and Lender hereby accepts, a first priority perfected security interest in and to: (A) each Cab/Chassis (including engine) and Additional Equipment described on one or more Loan Schedules referencing this Note; (B) each item of equipment ("Equipment") described on one or more Loan Schedules referencing this Note; (C) all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on either the Cab/Chassis (collectively referred to as a "Vehicle") or the Equipment, and all proceeds and products therefrom; (D) any insurance proceeds received in connection with the Vehicle or the Equipment; and, (E) the $0.00 cash collateral (the "Cash Collateral") given to Lender on or before any Loan Schedule is funded (all of the foregoing shall be collectively referred to as the "Collateral").  Maker will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary in Lender's sole discretion to perfect or maintain the security interest herein granted. The title to each Motor Vehicle shall reflect the Lender or its nominee as the sole lien holder thereon (including pursuant to any applicable electronic titling statutes) and, without the prior written consent of Lender, Maker shall not remove or cause the removal of such lien holder notation. Maker shall cause each title issued with respect to a Motor Vehicle to be delivered directly to Lender from the applicable motor vehicle authority or, if not possible or if Maker receives any such title, Maker shall forthwith deliver such title to Lender or its designee. To the extent permitted by applicable law, Lender is authorized to sign and file such Motor Vehicle Documents, titles and UCC Documents as Maker's attorney-in-fact.  The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (individually a "Guarantor" and collectively, the "Guarantors") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Lender's possession shall be non-interest bearing and will be commingled with Lender's general funds. Lender may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Lender.

**(3)** Location of Vehicle and Other Collateral.  Unless otherwise noted on a Loan Schedule, Maker will garage the Vehicle and keep any other Collateral at the notice address as listed above and, other than for operating the Vehicle, shall not remove the Vehicle or any other Collateral therefrom unless Maker gives Lender written notice of such removal and the new location where either the Vehicle will be garaged or any other Collateral will be kept at least 30 days prior to removal and executes such documents as Lender requires to continue the perfection of its security interest.

**(4)** Representations and Warranties.  To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: (A) Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; (B) they have the power to execute this Note and deliver same to Lender; (C) The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party; (D) As of the date of funding of the Note, Maker has good, indefeasible and merchantable title to and ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Lender; (E) The security interest granted by Maker to Lender in the Collateral constitutes a valid first perfected lien and security interest in the Collateral; (F) There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors; (G) Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; (H) Maker, to the best of its knowledge, is not in breach of, in default under, or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; (I) Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business; (J) The financial statements previously provided to Lender as part of Lender's credit review fully and fairly present the assets, liabilities and financial condition of Maker as of the respective dates thereof and for the periods covered thereby and that there were no omissions of other facts or circumstances therefrom which were, are or may be material and that there has been no material adverse change therein since the date of such financial statements; (K) they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; (L) All Collateral will be used by Maker solely for its business purposes and, therefore, this Note is NOT governed by the New York Motor Vehicle Retail Leasing Act; and, (M) All representations and warranties of Maker are true at the time of Maker's execution of this Agreement and shall survive the execution, delivery and acceptance hereof.

**(5)** <u>Covenants of Maker</u>.  So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Lender such evidence of compliance as may be requested by Lender, to wit: (A) Maker shall comply with all applicable laws with respect to the Vehicle and its operation and use and permit the Vehicle to be operated only by drivers holding a valid license to operate the Vehicle; (B) Maker shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of each Vehicle and any Equipment; (C) Maker shall, at its sole cost and expense: (i) keep the Vehicle registered in conformity with the laws of the states of operation, with such registration and the title for the Vehicle including THE PERFECTION OF THE SECURITY INTEREST FOR THE BENEFIT OF LENDER; (ii) provide the original title to the Vehicle issued by the State where the Vehicle is registered and a copy of the motor vehicle registration for the Vehicle to Lender within 5 days after Maker's receipt of same and, if such registration does not contain the proper license plate number of the Vehicle, Maker will simultaneously provide such license plate number to Lender; and, (iii) have the Vehicle timely inspected in accordance with all at applicable laws and make any and all repairs that are necessary to enable the Vehicle to pass such inspections; (D) Maker shall, at its sole cost and expense, obtain and maintain insurance policies from an insurance company licensed to do business in the state where each Vehicle is registered and where each item of Equipment is located that has a minimum A.M. Best's rating of B+ or better: (a) as regards Equipment, for comprehensive property and fire insurance with extended coverage in an amount not less than the then outstanding balance of any related Loan Schedules; and/or, (b) as regards any Vehicle, to protect the interests of Lender and/or Maker against collision damage, comprehensive fire and theft loss, and liability for bodily injury and property damage, as follows: (i) Bodily Injury Liability: MINIMUM $500,000.00/$1,000,000.00; (ii) Property Damage Liability: MINIMUM $250,000.00; (iii) Collision Damage to Vehicle: UNPAID LOAN BALANCE WITH MAXIMUM DEDUCTIBLE OF $1,000.00; and, (iv) Comprehensive Fire & Theft: UNPAID LOAN BALANCE WITH MAXIMUM DEDUCTIBLE $1,000.00.  Lender must be named as mortgagee and lender's loss payee as its interest may appear. Maker shall deliver an original of each Policy providing such coverages (or such other evidence thereof as Lender may require) to Lender prior to the Commencement Date. If Maker fails to obtain or at any time maintain a Policy, Lender may at its sole option either (a) provide such insurance and charge the cost thereof to Maker, or (b) elect not to provide such insurance and treat such failure of Maker as an Event of Default. Each Policy shall name Lender and its Assignees as mortgagee and loss payee as its interests may appear and include an endorsement to the effect that the carrier will give Lender at least ten (10) days' prior written notice of the effective date of any alteration or cancellation of the Policy, and that as to the interest or coverage of Lender or any Assignee, the Policy shall not be suspended, forfeited or in any manner prejudiced by any default, misrepresentation or other breach of warranty, condition or covenant by Lender or Maker under this Lease or the Policy. Upon the occurrence or later discovery of any damage to or loss of the Vehicle (whether by accident, fire, theft, vandalism or otherwise), Maker shall immediately notify Lender thereof by telephone, provide written notice thereof to Lender within 24 hours, and promptly submit any required notifications and reports to the appropriate law enforcement agencies (with copies thereof provided to Lender). Maker hereby appoints Lender (and any Assignee) as Maker's attorney-in-fact to make and settle any and all insurance claims in their respective sole discretion, receive payment of ad insurance proceeds and other amounts, execute and endorse in Maker's name and on Maker's behalf ad documents, checks or drafts relating thereto and apply same to payment of any damage or loss to Lender's or Assignee's interests. Other than for Maker's actual receipt of insurance proceeds, Maker's liability to Lender for the full and timely repayment of the Note shall not be reduced or diminished by Maker's compliance with the terms of this subsection of the Note; (E) Maker shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, any of the Collateral; (F) Maker will send written notification to Lender, attention: President, by certified mail within 5 days upon learning of the institution of any suit or administrative proceeding, whether or not the claim is considered by Maker to be covered by insurance against Maker with respect to the Collateral or directly against the Collateral; (G) If requested by Lender, Maker shall forward to Lender or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end; (H) Maker will at all reasonable times permit the Lender to enter into and upon any premises where the Collateral is located for the purpose of inspecting same or otherwise protecting the interests of Lender therein; (I) Maker will maintain the Collateral in good condition and repair (normal wear and tear excepted) and in accordance with the recommendations of the respective manufacturer(s) and will pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Collateral is located; (J) If requested by Lender, Maker shall obtain and deliver to Lender any and all landlord's and mortgagee's waivers, estoppel certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral; (K) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note; (L) Maker will substantially and timely comply at all times with other agreements to which Maker is a party; (M) Maker will promptly pay and discharge, or cause to be paid and discharged, when due any and all taxes (including, without limitation, all sales and personal property taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or otherwise, provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such taxes or assessments; (N) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral; (O) Allow Lender the right, without any Lender obligation, to make any or all payments to creditors (including but not limited to the Landlord of the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Lender's rights and Lender's security interest(s) and/or mortgages in the Collateral and Maker and any such sums paid by Maker shall be added to the Note's principal and shall also be subject to interest; (P) Maker will hold and save Lender free and harmless: (i) from any causes of action, claims, damages and liabilities due to the actions or inactions of Maker, Maker's officers, directors and employees, and shall pay for Lender's reasonable attorney fees to defend Lender against any such claim; and, (ii) against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Lender due to Maker's and/or any Guarantor's default under this Agreement; and, (Q) Permit Lender to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Lender's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith.

**(6)** <u>Lender's Consent</u>.  Except with the prior written consent of Lender, which shall not be unreasonably withheld: (A) Maker and the Guarantor(s) will not: (i) make any material change in organization or management or the manner in which Maker's business is conducted; (ii) become party to any merger or consolidation with any company or entity of any kind whatsoever, or sell substantially all of its assets, liquidate or dispose of its business; and/or, (iii) create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral; and, (B) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise.

**(7)** <u>Events of Default</u>.  Any of the following occurrences shall constitute a default under this Note: (A) the non-payment when due of any installment required to be made hereunder and such default continues for the earlier of 10 days or 5 days after written notice to Maker; (B) failure to provide the original title to the Vehicle to Lender within 5 days after Maker's receipt of same; and/or (C) failure to perform any other requirement of this Note or of any other agreement delivered by Maker to Lender and such default continues for the earlier of 10 days or 5 days after written notice to Maker; and/or (D) If the Collateral or a significant part of Maker's assets is subject to levy or execution or other judicial process, and the same is not removed or bonded within 15 days after any lien is placed thereon; and/or (E) Maker's sale, attempted sale or offering for sale of any of the Collateral without the express written permission of Lender; (F) If any of the representations and/or warranties detailed in paragraph (4) above turn out not to be true; and/or (G) There shall be a judgment or judgments against Maker or any Guarantor for an amount in excess of $10,000.00 that remains unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and/or (H) If Maker and/or any Guarantor fails to either comply with or abide by the Covenants detailed in paragraph (5) above; and/or (I) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Lender; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings and the same is not dismissed within 30 days; (iv) appointment of a receiver or an assignment for the benefit of creditors; (iv) the whole or partial suspension or liquidation of either of their usual business; (v) failure to pay any tax when due; (vi) having made or making any misrepresentation to the Lender for the purpose of obtaining credit or an extension of credit; and, (vii) default

with respect to the real estate lease for Maker's principal place of business; and/or (J) If any Additional Equipment as described on a Loan Schedule is removed from its respective Cab/Chassis.

**(8)** Remedies on Default. In the event of the occurrence of any default hereunder, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided herein, by law and/or by equity, and may be exercised singly or concurrently: (A) at the option of Lender, all past, present and future payments required by this Note shall immediately become due and payable, but not more than that amount permitted under applicable law; (B) at the option of Lender, declare the entire unpaid principal sum of all Loan Schedules immediately due and payable; (C) Maker and all Guarantors will jointly and severally pay to Lender: (i) any prepayment fee that would have been due to Lender had this Note been fully paid as of the date of an event of default; (ii) any disposition charge that would have been due to Lender upon full payment of each Loan Schedule; and, (iii) such further amount as shall be sufficient to cover the cost and expense of enforcing this Note, including but not limited to: reasonable compensation to the attorneys of Lender (regardless of whether any action is commenced and if so commenced, whether incurred at trial or appeal, and whether incurred prior to or after the bankruptcy of Maker); costs and expenses directly or indirectly related to the Collateral (i.e., costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral); (D) Maker will, at request of Lender, return all of the Collateral, at Maker's sole cost and expense, to any place designated by Lender that is within 250 miles of Maker's notice address as is detailed above; (E) Lender may, at its sole and exclusive option, perform for Maker, any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note; (F) Lender shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the Collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Lender will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made). The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the Maker's notice address no less than 10 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Lender and/or its representative may purchase all or part of the Collateral at a public or private sale. To the extent that there is an overage resulting from a sale of any Collateral, the excess shall first be applied to any other Loan Schedule that is in then in default, then, at Lender's discretion, to any other Loan Schedule or any other outstanding obligation(s) due to Lender by Maker,; (G) at the option of Lender, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Lender receives payment in full; (H) Lender shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter any premises under the control of Maker or any Guarantor, without any obligation to pay rent to Maker or any Guarantor, by Lender's own means through self-help and without judicial process, breaking locks where necessary but without breaching the peace, or with legal process, in which case Maker agrees not to resist or interfere, and: (i) render the Collateral unusable without permanently diminishing the Collateral's value; and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner, protection, and/or removal; and/or (I) The right to take such other and further action as Lender may at law or in equity be entitled to take.

**(9)** Costs and Expenses. Maker shall pay (or at Lender's option, reimburse Lender for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Agreement. Maker further agrees to pay Lender a non-refundable **395.00** document preparation fee prior to Lender funding this Note and a $195.00 per Vehicle disposition charge upon payment of each Vehicle listed on a Loan Schedule as reimbursement for all Lender's expenses associated with the release and transfer of liens and title with respect thereto.

**(10)** Maximum Rate. The maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits, such excess payment shall be automatically credited to principal as a permitted partial prepayment, applied to the installments in the inverse order of their maturities, without any prepayment fee being due with respect thereto.

**(11)** Governing Law, Waiver of Jury Trial, Service of Process, Counterclaims, Jurisdiction, Venue. This Note, the following Irrevocable Guaranty, and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Lender, whether or not arising out of or relating to this Note: (A) all parties to this Note and the following Irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient at the recipient's last notice address as known by the sender via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches, and any set-off, counterclaim or cross-claim of any nature or description (including but not limited to war, act of God, governmental regulation, strike, loss, damage, destruction, obsolescence, inability of Debtor to use the Collateral or any part thereof for any reason), other than actual payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender in a separate action, such set-off, counterclaim or cross-claim may be interposed in any action brought by Lender); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, Nassau and/or Suffolk, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter. Notwithstanding the aforementioned, litigation regarding possession of the Collateral may be brought in any applicable jurisdiction.

**(12)** No Waiver. The Lender shall not by any act of delay, commission, failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Lender, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Lender of any right or remedy under the terms of this Note or the following Irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Lender, and no course of dealing between Maker and/or Guarantors and Lender shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Lender. No notice to or demand on Maker or any Guarantor in any case shall entitle Maker or any such Guarantor to any other or further notice or demand in the same, similar other circumstances.

**(13)** Residual Value. As regards any Loan Schedule that references this Note, the total amount of the column captioned "Residual Value" must be paid to Lender on the: (a) on the 7th day following the last required weekly payment for those Loan Schedules requiring weekly payments; (b) the 14th day following the last required bi-weekly payment for those Loan Schedules requiring bi-weekly payments; (c) the 15th day following the last required semi-monthly payment for those Loan Schedules requiring semi-monthly payments; and, (d) the 30th day following the last required monthly payment for those Loan Schedules requiring monthly payments.

**(14)** Miscellaneous. (A) All parties to this Note and the following Irrevocable Guaranty: (i) expressly waive, to the extent permitted by law: presentment for payment; notice of dishonor; protest; notice of protest of this Note or the following Irrevocable Guaranty; other notice of any kind and all demands whatsoever; (ii) agree not to make any claim against one another for any consequential damages; and, (iii) agree that all terms and provisions of this Note and the following Irrevocable Guaranty: (a) shall be binding upon and shall inure to the benefit of, and be enforceable by the parties hereto, their respective

legal representatives, permitted successors and permitted assigns; and, (b) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (iv) represent and warrant that the other party, its agents, servants or employee have made no representation or statement whether oral or in writing, relating to or concerning this Note other than specifically set forth herein; (v) agree that this Note and the following Irrevocable Guaranty may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; (B) Any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law shall be void and deemed deleted therefrom without invalidating any other provision thereof; (C) provided that Maker is not then in default, Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker, but: (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date; and, (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee; (D) In the event that any word, sentence, paragraph or article of this Note or the following Irrevocable Guaranty is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted; (E) Time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below; (F) Words used in this Note and the following Irrevocable Guaranty: (i) as singular shall be construed to mean the plural where necessary; and, (ii) as plural shall be construed to mean the singular where necessary; (G) The necessary grammatical changes required to make the provisions of this Note and the following Irrevocable Guaranty apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed; (H) The Section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto; (I) Lender may negotiate, assign and transfer this Note and any other document executed in connection herewith; (J) Maker may not transfer or assign this Note; (K) Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same and Maker agrees that such acceptance shall be conclusive proof, as between Maker and Lender, that: (i) any defects in the Collateral shall not reduce or diminish Maker's obligations under this Note; (ii) Lender has fully and satisfactorily performed all covenants and conditions to be performed by Lender under the Note; and, (iii) Lender should pay the seller of the Collateral; (L) by signing this Note and/or the Irrevocable Guaranty below, the undersigned, who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account; (M) to the extent that any communications and notices are required by this Note or the following Irrevocable Guaranty, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other; and, (N) notwithstanding the aforementioned, this Note and the following Irrevocable Guaranty may be executed: (i) in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) delivered by email and/or facsimile transmission and/or other means of electronic transmission, and shall be deemed to have the same legal effect as delivery of an original signed copy thereof.

**(15)** No Warranty. The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. AS BETWEEN MAKER AND LENDER, MAKER FINANCES THE COLLATERAL ON AN "AS-IS" BASIS. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and manufacturer for a description of any such rights.

**Maker: DB Transport LLC**, by

*DocuSigned by:*
*Donshekie Fredrick Barrett*
5ABC70C6046B47E...
Donshekie Fredrick Barrett, Member

**Lender: Eastern Funding LLC**, by

*DocuSigned by:*
*Connie Poormon*
66C47532072D459...

Print Name and Title: Connie Poormon    AVP/Office Manager

**IRREVOCABLE GUARANTY**: Unless otherwise defined, words used herein shall have the same meaning as in the above Master Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby: (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise, whether arising by virtue of the Note or otherwise; (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender; (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker; and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. **The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of this Irrevocable Guaranty and of the Note, and that several provisions of the Note specifically apply to this Irrevocable Guaranty.** The provisions hereof may not be changed orally, but only by a writing signed by Lender. The undersigned Guarantor(s) represent and warrant to Lender that: (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and, (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

*DocuSigned by:*
*Donshekie Fredrick Barrett*
5ABC70C6046B47E...

Donshekie Fredrick Barrett
Notice
Address: 5043 Fairbury Way D'Iberville MS 39540

100.00%
My Ownership
Percentage of Maker

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1FVACWFC3RHUT9955 | FRHT | 2024 | M2 | SK | MS0742964480 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 08/01/2024 | 07/12/2024 | 6 | NEW | PU | 10000 ACTUAL |

**OWNER(S)**

DB TRANSPORT LLC
5043 FAIRBURY WAY
DIBERVILLE MS 39540-1000

**BRANDS**

**BENEFICIARY**

☐ Fully Autonomous Vehicle

**1ST LIENHOLDER**

EASTERN FUNDING LLC
175 BROADHOLLOW RD
MELVILLE NY 11747-4911

DATE: 01/10/2024

**2ND LIENHOLDER**

DATE:

**MAIL TO**

EASTERN FUNDING LLC
175 BROADHOLLOW RD
MELVILLE NY 11747-4911

T6

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ (LIENHOLDER) BY _____ (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 _____

2ND LIEN _____ (LIENHOLDER) BY _____ (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 _____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS THE 1ST DAY OF AUGUST 20 24

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER
O 05676110

MISSISSIPPI DEPARTMENT OF REVENUE

***NOTICE: ANY ALTERATION OR ERASURE VOIDS THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW***

Federal and State Law requires that you state the mileage in connection with the transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths) _____

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**SELLER:**
Signature(s) _____ Printed Name(s) _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____ Printed Name(s) _____

### FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths) _____

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____ Printed Name(s) _____

### SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths) _____

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____ Printed Name(s) _____

### THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths) _____

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"
**BUYER:**
Signature(s) _____ Printed Name(s) _____

### LIENHOLDER TO BE SHOWN ON NEW TITLE

Lien in favor of _____

whose address is _____

*SCRAPPED, DISMANTLED, OR DESTROYED VEHICLE - This is to be filled in by Vehicle Owner. Certificate of Title must be mailed or delivered to the Mississippi Department of Revenue. I/we hereby warrant that the Vehicle described on the reverse side of this Certificate was scrapped, dismantled, or destroyed on _____, 20___*

Owner's Signature _____