THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



| | Customer No. | Contract No. |
|---|---|---|
| | | 4184 |

# EQUIPMENT FINANCE AGREEMENT

| **Customer** (also **you** or **your**) | DB Transport LLC | **Address** | 3586 Sangani Blvd #L307, Diberville, MS 39540-0024 |
|---|---|---|---|

Amur Equipment Finance, Inc. (**Secured Party**, also **we**, **us** or **our**) agrees to provide to you the Financed Amount subject to the terms and conditions of this EFA.

1. **Key Definitions**

| Financed Amount | Term | Required Initial Payment | Periodic Payment | Payment Frequency | Balloon Payment | Security Deposit |
|---|---|---|---|---|---|---|
| $25,000.00 | 36 Months | $0.00 | $1,022.52 | Monthly | N/A | N/A |

**EFA** means this equipment finance agreement and all schedules, exhibits, addendums and amendments thereto (also referred to as **Contract**).
**Contract Documents** refer to this EFA and all agreements and documents related thereto (excluding any Guaranty) described as Contract Documents and identified by the above Contract Number.
**Obligations** means all your payment and performance obligations under this EFA and all other Contract Documents.
**Equipment** means the equipment and/or personal property financed hereunder by us and described in **Schedule A**.
**Collateral** means the Equipment and any additional collateral pledged to us to secure the Obligations as described in **Schedule A**.
**Guaranty** means any written guaranty of your Obligations hereunder; **Guarantor** refers to any person or entity that signs a Guaranty.
**Funding** means any portion of the Financed Amount we pay to a designated vendor or reimburse to you.
**Payment Due Date** means, throughout the entire Term, the same numeric day of each month as we will advise you.

2. **Term.** The Term shall commence on the first Payment Due Date. However, your Obligations and our rights hereunder shall begin the day we execute this Contract, which shall remain in full force and effect, together with all Contract Documents, until you have completely and indefeasibly discharged all Obligations.
3. **Unconditional and Non-Cancelable Obligations.** YOUR PAYMENT AND ALL OTHER OBLIGATIONS UNDER ALL CONTRACT DOCUMENTS ARE ABSOLUTE, UNCONDITIONAL AND IRREVOCABLE AND NOT SUBJECT TO ABATEMENT, REDUCTION, SET-OFF, CLAIM, OR DEFENSE FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF ANY PAST, PRESENT OR FUTURE CLAIM AGAINST US, A VENDOR, THE COLLATERAL, ANY THIRD PARTY, A CASUALTY OR EVENT BEYOND YOUR CONTROL. YOU CANNOT CANCEL OR TERMINATE THIS EFA OR ANY OTHER CONTRACT DOCUMENT FOR ANY REASON.
4. **Disclaimer of Warranties.** You acknowledge and agree that: (i) you selected the Equipment, accept it AS IS and WE MAKE NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER AS TO ITS MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE; (ii) you acknowledge and agree that you selected any software included with the Collateral (the **Software**), you assume all liability related to any unauthorized access or use of the Software and any data collected, stored or used by it (the **Data**) and we do not own or license any Software or Data nor have any duty to configure, maintain and/or otherwise safeguard them; (iii) YOU WAIVE AGAINST US, AND WE SHALL NOT BE LIABLE FOR, ANY CLAIM FOR LOSS, INJURY OR DAMAGE CAUSED BY ANY COLLATERAL AND/OR CONTRACT DOCUMENT, INCLUDING BUT NOT LIMITED TO, ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES; (iv) you shall look only to the vendor or manufacturer (not us) for any claim related to Equipment or Software, which shall not relieve you or any Guarantor from any respective obligations hereunder.
5. **Security Interest.** To secure your performance of the Obligations, you grant us a first priority security interest in the Collateral (the **Security Interest**). Failure to perfect our Security Interest in any Collateral shall not affect or impair your Obligations or those of any Guarantor. You have (or will have upon acquisition of the Equipment) good and marketable title to the Collateral and shall maintain such title until all your Obligations have been satisfied. You shall not sell, transfer, lease, assign, relinquish possession of or otherwise dispose of the Collateral, which is and must remain free and clear of any security interest, lien or encumbrance of any kind (except our Security Interest) and be under your control at all times. You shall give us immediate notice of any unpermitted liens, claims or encumbrances and cause them to be immediately and irrevocably removed at your expense. You shall title and/or register any eligible Collateral as directed by us.
6. **Payment Obligations**
   (a) You promise to pay to us in good and immediately available funds, with or without notice or demand, all the amounts listed herein (each, a **Payment**).
      (i) The Required Initial Payment, any Security Deposit and the Transaction Fees (all as disclosed in the **Document Package Checklist**) prior to us advancing any Funding. If we choose not to execute this EFA for any reason, we will return any Required Initial Payment, Security Deposit and title fees not incurred but keep the balance as liquidated damages.
      (ii) Throughout the Term at the Payment Frequency, each Periodic Payment on the applicable Payment Due Date.
      (iii) At the end of the Term, the Balloon Payment, if any.
      (iv) A **Per Diem** amount, which shall constitute interest on the Financed Amount to be calculated as 1/30th of the highest Periodic Payment amount for each day between the last Funding and the first Payment Due Date.
      (v) All costs and expenses, whether incurred by us, counsel and/or agents, related to the Contract Documents, such as due diligence, documentation, searches and inspection costs, as well as fees and expenses to establish, perfect, protect or enforce our rights, interests and remedies, irrespective of whether you or any Guarantor is in default of any obligation to us.
      (vi) Any other amounts due under this EFA or any other Contract Document.
   (b) We shall apply all Payments in our sole discretion to satisfy the Obligations and disregard any restrictive endorsement.
   (c) You authorize us to increase any applicable Payment by up to 15% or decrease them without limit to reflect a corresponding change in the Financed Amount; any such increase or decrease will be reflected in our billings to you.
   (d) You agree to pay: (a) for each Payment we do not receive in full within ten (10) days of its due date, a late charge equal to the greater of (i) 10% of such late Payment and (ii) a minimum amount determined by our then-applicable fee policy; (b) for each returned ACH debit charge or check, a fee determined by our then-applicable fee policy.
7. **Security Deposit.** We may commingle any Security Deposit with our assets and apply it to any Obligation at our sole discretion, after which you agree to replenish it. Any unused portion will be remitted to you, without interest, upon full performance of the Obligations.
8. **Collateral Condition, Maintenance and Inspection**

   (a) YOU SHALL USE THE COLLATERAL FOR BUSINESS PURPOSES ONLY.
   (b) You shall keep at all times the Collateral at the location(s) specified on Schedule A or as otherwise disclosed to us, except you may move any mobile Collateral within the U.S. in your normal course of business provided it returns to such location(s) on a regular basis.
   (c) You are responsible for properly installing, operating, maintaining, repairing and registering the Collateral and for keeping it in the same condition as when delivered to you, except for ordinary wear and tear. You shall not alter the Collateral without our prior written consent nor make it part of any real property. Any addition or improvement to the Collateral shall be deemed a permanent accession thereto subject to our Security Interest.
   (d) Upon our written request, you shall prominently label the Collateral as being subject to our Security Interest.
   (e) We may inspect the Collateral and related documentation at any reasonable time.
9. **Insurance and Risk of Loss**
   (a) You agree to keep the Collateral insured against loss and liability under terms and with insurers acceptable to us (the **Required Coverage**) and agree to have us named as lender's loss payee and additional insured. Upon demand, you agree to provide us with valid evidence of the Required Coverage.
   (b) If you fail to maintain the Required Coverage (and without us waiving any resulting default), we have the right to purchase, at your expense, insurance to protect our interests, in which case you acknowledge and agree that we are not a reseller of insurance and the amount we bill you may be higher than what your insurance provider could have charged you and include a profit for us as well billing and processing fees.
   (c) You shall bear the entire risk of loss, theft, damage, destruction or requisition (each, a **Casualty**) of the Collateral from any cause whatsoever. You shall promptly notify us in writing of any Casualty and follow our directive by either (i) placing the affected Collateral in its pre-Casualty condition at your sole cost and expense or (ii) paying all remaining Obligations, less any Casualty proceeds received by us.
10. **Taxes.** You are required to report and pay when due all personal property taxes on the Collateral. You are required to pay when due all other taxes, fees, assessments, interest, penalties and other governmental charges arising hereunder, including, without limitation, all other personal property, excise, use, sales and gross receipts taxes (excluding our income taxes), plus user fees, tolls and fines (collectively, the **Taxes**), even if we may, in our sole discretion, elect to pay any Taxes directly to the appropriate taxing authority on your behalf, in which case you agree to promptly reimburse us that cost.
11. **Representations and Other Agreements**
    (a) You are and shall remain (i) duly organized, validly existing and in good standing under the laws of the state of your organization and are and (ii) duly qualified and licensed to do business wherever necessary.
    (b) You shall give us at least thirty (30) days' prior written notice before you change your name, mailing address or place of business.
    (c) You have adequate power and capacity to enter into this EFA and all other Contract Documents, which have been duly authorized, executed and delivered by, and constitute valid, legal and binding agreements enforceable against, you.
    (d) Except as previously set forth in writing to us, you do not require a governmental or other approval to enter into the Contract Documents and your execution thereof does not violate any judgment, regulation or law.
    (e) All information you furnish to us is true, complete, correct and not misleading.
    (f) You are not party to any legal proceeding and agree to comply with all Federal, state and local laws and regulations.
12. **Default.** Any of the following shall constitute a Default under this EFA:
    (a) We do not receive any one Payment as and when required hereunder.
    (b) You breach or fail to perform any obligation, provision and/or condition of this EFA or any other Contract Document.
    (c) You or any Guarantor shall default under any other financial obligation or real property lease.
    (d) You or any Guarantor shall have made an untrue or misleading statement or representation.
    (e) You or any Guarantor takes any action to: (i) cease, suspend or wind up its respective business; (ii) terminate its existence (or if an individual, he or she dies or is adjudicated as incompetent); and/or (iii) transfer any portion of its ownership to, merge with or convey or dispose of substantially all of its assets to, any person or entity (each, a **Dissolution Event**).
    (f) You or any Guarantor (i) becomes insolvent; (ii) takes any action under (or is involuntarily placed in) any bankruptcy, reorganization, insolvency, receivership or other similar proceedings for the relief of debtors or benefit of creditors; and/or (iii) makes an assignment for the benefit of creditors or admits its inability to pay its debts as they become due (each, an **Insolvency Event**).

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Contract No.

▬4184

**13. Remedies.**  Upon the occurrence of a Default, we can elect to declare you in default of this EFA and any other Contract Document and, subject to applicable law, exercise cumulatively any or all of the following remedies without notice to you or any Guarantor:
 (a) Require that you pay us the sum of the following amounts (collectively, the **Accelerated Amount**) calculated as of the date of your Default:
  (i) All accrued and unpaid Periodic Payments;
  (ii) The present value of all remaining Periodic Payments and any Balloon Payment, all accelerated and discounted at an annual percentage rate equal to 3.00%;
  (iii) All other Payments due hereunder;
  (iv) All of our Enforcement Costs (as defined below); and
  (v) A daily default interest equal to the lower of (1) an 18.00% annual percentage rate and (2) the highest amount allowed by law, applied to all sums due hereunder until paid to us.
 (b) Demand turnover of the Collateral, which you shall immediately do at your expense as directed by us while preserving it in a marketable condition.
 (c) Enter any premises where the Collateral is located to inspect, render unusable or take immediate possession of it, with or without demand, notice, court order or other process of law and without liability to us.  In this case, you irrevocably waive to the fullest extent permitted by law any bond, surety or security required as an incident of such action.
 (d) Sell, lease or otherwise dispose of the Collateral at a public or private sale, with minimum ten (10) days' notice.
 (e) Pursue one or more remedy available to us under any Contract Document, any Guaranty, the Uniform Commercial Code (the **UCC**), any other applicable law and/or in equity.

As material inducement for us to enter into this EFA, you expressly agree that the Accelerated Amount (i) represents a reasonable estimate of the anticipated harm we will suffer from a Default, such harm being difficult to ascertain accurately due to the variability of our operating, financing and other costs and (ii) compensates us for the loss of our bargain, including all costs, expenses and fees arising from such Default.

**14. Enforcement Costs.**  Whether or not you or any Guarantor are in default and/or in bankruptcy, you shall be obligated to pay us all Enforcement Costs, which represent all attorney's fees, other legal fees as well as all costs and expenses we incur, in the exercise or preservation of our rights or remedies and/or our efforts to enforce judgments, under this EFA, any Contract Documents or Guaranty, including all expenses related to the turnover, recovery, repossession, preservation, refurbishing, advertising, sale, re-lease or other disposition of any Collateral.

**15. Assignment**
 (a) You may not assign, delegate or transfer any of your rights or responsibilities under any Contract Document, which shall remain binding upon you, your heirs, successors and assigns.
 (b) We may sell, transfer, assign or otherwise convey to any affiliated or unaffiliated person or entity (an **Assignee**), without notice to you or your consent, any or all of our rights, interests and benefits (in whole or in part) under this EFA (including Payments due hereunder), any other Contract Document, a Guaranty or the Collateral (an **Assignment**).  Upon any Assignment you acknowledge that: (i) such Assignee shall have the rights, interests and benefits we convey, but none of our obligations under any assigned Contract Documents; (ii) such Assignee's rights shall not be subject to any claim, defense or set-off that you or any Guarantor may have against us; (iii) you shall perform all the Obligations hereunder for the Assignee as required under such Assignment; and (iv) if requested, you shall (and cause all Guarantors to) acknowledge such Assignment.

**16. Indemnification.**  You agree to indemnify, defend and hold us, any Assignee and our respective agents, employees, directors, officers and shareholders, harmless (on a net after-tax basis) from and against any suits, claims, losses, damages, Taxes or other harms suffered (including but not limited to all attorney's fees incurred and other Enforcement Costs) relating to this EFA, any other Contract Documents, Guaranty or Collateral and/or unauthorized access to Software or Data.

**17. Choice of Law and Service of Process.**  THIS EFA AND EACH OTHER CONTRACT DOCUMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEBRASKA (WITHOUT REGARD TO ITS CONFLICT OF LAWS PRINCIPLES) REGARDLESS OF THE LOCATION OF THE COLLATERAL.  YOU AGREE THAT WE HAVE THE OPTION TO CHOOSE THE VENUE, FORUM AND STATE IN WHICH WE COMMENCE ANY LEGAL ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY OR OTHERWISE RELATED TO THIS EFA, ANY CONTRACT DOCUMENT AND/OR THE COLLATERAL AND YOU HEREBY CONSENT TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE COURTS OF THE STATE OF NEBRASKA, HALL COUNTY OR THE U.S. DISTRICT COURT LOCATED IN THE STATE OF NEBRASKA OR, IN THE EVENT THAT THIS EFA IS ASSIGNED BY US, ANY OTHER COURT SELECTED BY THE ASSIGNEE.  HOWEVER, IF YOU COMMENCE ANY LEGAL ACTION OR PROCEEDING AGAINST US, YOU MAY ONLY DO SO IN ONE OF THE AFORESAID COURTS LOCATED IN THE STATE OF NEBRASKA.  You agree that any service of process shall be sufficiently served if sent to you by a nationally recognized overnight delivery service to your current address on our records and it shall be deemed complete two (2) business days after having been sent to you.

**18. Arbitration.**  Any controversy, claim or breach related to this Contract may be settled by arbitration according to the LAWS OF THE STATE OF NEBRASKA; any judgment upon the award rendered by the arbiter(s) may be entered in any court of jurisdiction.  Arbitration shall be held in the State of Nebraska under the American Arbitration Association commercial arbitration rules.

**19. Waiver of Jury Trial.**  EACH PARTY HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR PROCEEDING TO WHICH IT MAY BE A PARTY REGARDING ANY MATTER WHATSOEVER RELATED TO THIS EFA, ANY OTHER CONTRACT DOCUMENTS, GUARANTY, SOFTWARE, DATA AND/OR COLLATERAL.

**20. Miscellaneous**
 (a) *Entire Agreement and Amendments.*  The Contract Documents represent the entire agreement between you and us, supersede all prior agreements and communications concerning the matter hereof and may only be amended in writing by mutual consent, except you authorize us to: (i) date and fill blanks; (ii) update contact information and payments as allowed in the Contract Documents; (iii) correct any errors or omissions; and (iv) amend Schedule A.
 (b) *Further Authorizations.*  You authorize us to: (i) sign and file on your behalf any document we deem necessary to perfect, protect, dispose of, transfer, sell or enforce our interest in the Collateral; (ii) take any action authorized by the Contract Documents; (iii) make claims for, execute and endorse all documents and receive all payments for checks or drafts covering loss or damage; (iv) take any other action allowed under your insurance policies; and (v) grant any of these powers to our agents.
 (c) *Severability and Usury Savings Clause.*  Any provision or remedy in the Contract Documents found to be invalid shall not impair the remaining ones.  You agree that a waiver of a Default shall not represent a waiver of any other Default, and that any delay or failure to enforce our rights does not prevent us from enforcing any rights later on.  Any amount we bill or collect in excess than what is allowed by law (including usury laws, if applicable) shall be deemed a mistake and we will, respectively, reduce any such excess amount to the maximum amount permitted by law or apply it against your other Obligations.
 (d) *Notices.*  We reserve the right to send notices, at our discretion, by personal delivery; by mail, deemed effective three (3) days after sending; or by electronic means (including emails and/or SMS messages, in which case you may incur charges from your communications service provider), deemed effective when sent.
 (e) *Credit and Information Disclosure.*  You confirm that upon the submission of an application on your behalf for financing to us, you and each Guarantor authorized us, and further authorize us until all your Obligations are satisfied, to obtain any credit, financial, trade and/or business information on you and any Guarantor (and you confirm that each Guarantor provided you with such authorization) from any bank, financial institution, credit reporting agency, trade reference and/or any other person or entity.
 (f) *Communications and Marketing.*  You and any Guarantor expressly consent to receiving communications including email, voice and text messages (including prerecorded, automated and/or artificial messages) from us, our agents and/or our Assignees, for any purpose, including but not limited to marketing or collection purposes, at any email address, residential telephone line or wireless telephone number you provide us now or in the future (in which case message and/or data rate may apply).  This consent is not a condition of doing business with, or purchasing any goods/services from, us.  You and any Guarantor may unsubscribe or opt-out of any further telemarketing calls or marketing text messages at any time.
 (g) *Survival.*  All your Obligations and our rights shall survive the expiration or earlier termination of this EFA, all other Contract Documents and any Guaranty.
 (h) *Further Assurances.*  At your expense, you shall execute and deliver such additional documents and perform such further acts we may request to effect and preserve our Security Interest and rights under the Contract Documents.  You also agree to deliver such information or documents we may request, including insurance certificates, financial statements, tax returns, equipment records, real property waivers and trade or personal banking information.
 (i) *Timing.*  Time is of the essence with respect to your Obligations hereunder.
 (j) *Headings.*  Headings are for convenience only.

**Execution and Chattel Paper.**  This EFA and any related Contract Documents may be executed in counterparts manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed.  The copy of this EFA containing your original or electronic signature and (i) manually signed by us, marked "Original" and in our or any direct or indirect Assignee's possession or (ii) electronically signed by us and stored as an electronic record under our control, shall constitute the original authoritative version of such document for all purposes and shall constitute the sole "chattel paper" as defined in the UCC.  **THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

| CUSTOMER | DB Transport LLC | | Amur Equipment Finance, Inc. |
|---|---|---|---|
| Signature | *DocuSigned by:* [signature] | Signature | *DocuSigned by:* Mckenzie Medfelt |
| Name | Donsheki Fredrick Barrett | Name | |
| Title | Member | Title | Senior Funding Supervisor |
| Date | 9/11/2023 | Date | 9/18/2023 |

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Contract No.

4184

# SCHEDULE A – COLLATERAL

This **Schedule A** represents an integral part of the EFA referenced by the Contract Number above.

For the purposes of this EFA, Collateral shall refer to the following Equipment, any collateral in which we have or shall have a Security Interest, ownership and/or title under a separate agreement with the Customer, as well as any additional collateral listed below, in all cases whether now owned or hereafter acquired, together with all personal property installed in, affixed to or used in connection therewith and all present or future: (i) additions, accessories, accessions, attachments, parts, supplies, related software, intellectual property, rights, licenses and improvements thereto; (ii) substitutions, renewals, replacements and purchase options thereof; (iii) insurance, warranty, and other third-party claims; (iv) Customer's rights in connection with a third-party's use of such equipment under a sublease, rental or similar agreement; (v) proceeds and product in any form (including but not limited to insurance and sale proceeds) of each of the foregoing, whether it be cash, non-cash or in any other form; and (vi) to the extent the equipment identified herein is construed as or deemed inventory, that inventory and all accounts, accounts receivable, cash proceeds and all other proceeds related thereto or derived therefrom.

## Equipment

| Description | VIN/Serial Number | Equipment Location | Vendor |
| --- | --- | --- | --- |
| 2015 Chev | 1GB2CUEG4FZ120308 | 3586 Sangani Blvd # L307, Diberville, MS 39540-0024 | Bagwell Robert D |



goamur.com

Long-form EFA



| Customer Name | Contract No. |
|---|---|
| DB Transport LLC | ▮4184 |

# PERSONAL GUARANTY

This Personal Guaranty (the **Guaranty**) is provided by the undersigned **Guarantor(s)** (also, **you** or **your**) to **Amur Equipment Finance, Inc.** and its successors and assigns (collectively, also **we**, **us** and **our**) on the date shown under your signature below in connection with the EFA, Lease or other financing agreement identified by the Contract Number above (the **Contract**) by and between **DB Transport LLC** (the **Customer**) and us.  Any defined term not otherwise described herein shall have the meaning ascribed to it in the Contract or the other Contract Documents defined therein.

**Absolute, Unconditional and Irrevocable Guaranty.**  In exchange for the substantial benefit you and the Customer will receive from the transactions giving rise to Customer's Obligations and your obligations under this Guaranty, **you hereby (jointly and severally, if more than one Guarantor) absolutely, unconditionally and irrevocably guaranty to us (i) the full and timely payment of all sums due by Customer under the Contract and other Contract Documents and (ii) the continuing performance and compliance of Customer's Obligations to us**.  Each of the undersigned Guarantors further acknowledge, agree and confirm as follows:

1. We are unwilling to enter into the Contract unless this Guaranty is duly executed by all Guarantors.
2. You have read and understood all of the provisions of the Contract Documents, and hereby agree to abide by their Obligations, make all agreements, representations and warranties of a Guarantor therein as if they were contained herein and further acknowledge how they apply to you as Guarantor.
3. We have not made any representation, warranty or statement to induce you to execute this Guaranty, other than as may be set forth herein.
4. After giving effect to this Guaranty, you will remain solvent and will not transfer any assets to any party without full and valuable consideration therefor.
5. You waive (a) all rights and defenses, including suretyship defenses, under the law, equity or otherwise available to a person or entity agreeing to guaranty the obligations of another and (b) all notices, including notices of acceptance, demand, protest and consent to any changes or modifications to the terms of the Contract Documents.
6. Your obligations hereunder shall include all amounts paid by, or on behalf of, the Customer or any guarantor which may be recovered by any person or entity as a preference, fraudulent transfer or conveyance or similar transfer and all of our Enforcement Costs (defined below) related to any action, claims, counterclaims, defenses thereof or other issues related thereto.
7. You shall be obligated to pay us all Enforcement Costs, which represent all attorney fees, other legal fees, costs and expenses we incur by reason of any Default, the exercise or preservation of our rights or remedies, in bankruptcy or otherwise, under the Contract, any Contract Documents or this Guaranty (whether or not you or any other Guarantor are in default thereunder), including all expenses related to the return, recovery, repossession, preservation, refurbishing, advertising, sale, re-lease or other disposition of any Collateral.
8. Our rights and remedies and your obligations hereunder shall not be limited, waived or otherwise altered as a result of occurrences such as amendments, extensions of terms, waivers, invalidity and/or releases of any provision of the Contract Documents, in all cases with or without your direct knowledge thereof.
9. Our failure to perfect our security interest or title in any Collateral shall not affect or impair your obligations to us hereunder.
10. Nothing shall satisfy or discharge your liability hereunder except our written confirmation of the full and complete satisfaction of the Customer's Obligations and your obligations to us hereunder.
11. Until all of the obligations of yours and Customer to us are satisfied, you hereby (i) subordinate any rights of subrogation against Customer to all obligations of Customer and/or any third party to us and (ii) waive any right to seek payment, indemnification, recourse and/or reimbursement from (and/or make a claim against) the Customer, Customer's assets, any third party and/or any other source, to recover any payments or performance by you hereunder.

**Enforcement.**  We can enforce this Guaranty (and/or bring a separate legal proceeding) directly against you, irrespective of whether the enforcement and/or legal proceedings are also brought against the Customer and/or any other Guarantor, in the event you fail to comply with the terms of this Guaranty, you breach any representation herein and/or an Insolvency Event or Dissolution Event occurs.

**Assignment.**  You shall not assign or delegate any of your obligations under this Guaranty, which shall be binding upon your heirs, successors and assigns and shall inure to the benefit of our successors, representatives, affiliates and assigns.  We may sell, transfer, assign or otherwise convey to any affiliated or unaffiliated person or entity, without notice to you or your consent, any or all of our rights, interests and benefits (in whole or in part) under, or connected with, this Guaranty.

**Choice of Law and Service of Process.**  THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEBRASKA (WITHOUT REGARD TO ITS CONFLICT OF LAWS PRINCIPLES) REGARDLESS OF THE LOCATION OF THE COLLATERAL.  YOU AGREE THAT WE HAVE THE OPTION TO CHOOSE THE VENUE, FORUM AND STATE IN WHICH WE COMMENCE ANY LEGAL ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY AND/OR OTHERWISE RELATED TO THIS GUARANTY AND YOU HEREBY CONSENT TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE COURTS OF THE STATE OF NEBRASKA, HALL COUNTY OR THE U.S. DISTRICT COURT LOCATED IN THE STATE OF NEBRASKA OR, IN THE EVENT THAT THIS GUARANTY IS ASSIGNED BY US, ANY OTHER COURT SELECTED BY THE ASSIGNEE.  HOWEVER, IF YOU COMMENCE ANY LEGAL ACTION OR PROCEEDING AGAINST US, YOU MAY ONLY DO SO IN ONE OF THE AFORESAID COURTS LOCATED IN THE STATE OF NEBRASKA.  You agree that any service of process shall be sufficiently served if sent to you by a nationally recognized overnight delivery service to your current address on our records and it shall be deemed complete two (2) business days after having been sent to you.

**Arbitration.**  Any controversy, claim or breach related to this Guaranty may be settled by arbitration according to the LAWS OF THE STATE OF NEBRASKA; any judgment upon the award rendered by the arbiter(s) may be entered in any court of jurisdiction.  Arbitration shall be held in the State of Nebraska under the American Arbitration Association commercial arbitration rules.

**Waiver of Jury Trial.**  EACH OF THE UNDERSIGNED IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR PROCEEDING TO WHICH IT MAY BE A PARTY REGARDING ANY MATTER WHATSOEVER RELATED TO THIS GUARANTY, THE CONTRACT DOCUMENTS AND ANY COLLATERAL.

**Further Assurances.**  At your expenses, you will execute and deliver such further documents and perform such further acts as reasonably requested by us in order to give effect to the terms and conditions contemplated herein.  You also agree to deliver such information or documents we may request, including, without limitation, financial statements, tax returns, and trade or banking information.

**Credit and Information Disclosure.**  You hereby authorize us to obtain, until all your obligations hereunder are satisfied, any credit, financial, trade or business information on you from any bank, financial institution, credit reporting agency or any other person or entity.

**Notices.**  Notice can be sent to your address on our records (i) by First Class US mail and deemed effective three (3) business days thereafter or (ii) by personal delivery, telecopier or email and deemed effective when delivered or sent, respectively.

**Amendments.**  This Guaranty can only be amended in a writing signed by you and us.  You agree that this Guaranty represents the entire agreement between you and us pertaining to the subject matter hereof and supersedes all prior agreements and communications concerning the same.

## SIGNATURE PAGE FOLLOWS

| goamur.com | | Docs & Funding | Version 3 | Date | 7/5/2022 |
|---|---|---|---|---|---|



Contract No.

████4184

**Execution.** This Guaranty may be executed in counterparts manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed. **THIS GUARANTY CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

| GUARANTOR | Donsheki Fredrick Barrett |
|---|---|
| **Signature** | DocuSigned by: [signature] |
| **Date** | 9/11/█████████ |



| | Contract No. |
|---|---|
| | ████4184 |

## SCHEDULE A – COLLATERAL

### Equipment

| Description | VIN/Serial Number | Equipment Location | Vendor |
|---|---|---|---|
| 2015 Chev | 1GB2CUEG4FZ120308 | 3586 Sangani Blvd # L307, Diberville, MS 39540-0024 | Bagwell Robert D |

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



| | Contract No. |
|---|---|
| | 4184 |

# SCHEDULE A – COLLATERAL

This **Schedule A** represents an integral part of the Security Agreement referenced by the Contract Number above.

For the purposes of this Security Agreement, the Collateral is defined as all equipment and/or personal property listed below, together with all personal property installed in, affixed to or used in connection therewith and all present or future: (i) additions, accessories, accessions, attachments, parts, supplies, related software, intellectual property, rights, licenses and improvements thereto; (ii) substitutions, renewals, replacements and purchase options thereof; (iii) insurance, warranty and other third-party claims; (iv) Customer's rights in connection with a third-party's use of such equipment under a sublease, rental or similar agreement; (v) proceeds and product in any form (including but not limited to insurance and sale proceeds) of each of the foregoing, whether it be cash, non-cash or in any other form; and (vi) to the extent the equipment identified herein is construed as or deemed inventory, that inventory and all accounts, accounts receivable, cash proceeds and all other proceeds related thereto or derived therefrom.

**Collateral**

| Year | Manufacturer | Model | VIN | Equipment Location | Vendor |
|---|---|---|---|---|---|
| 2015 | Chev | | 1GB2CUEG4FZ120308 | 3586 Sangani Blvd # L307, Diberville, MS 39540-0024 | Bagwell Robert D |



goamur.com

Security Agreement - Titled Vehicles

# CERTIFICATE OF TITLE

Form # 79-001

**STATE OF MISSISSIPPI** — **ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1GB2CUEG4FZ120308 | CHEV | 2015 | SILVERADO | IP | MS1074238720 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 11/16/2023 | | 8 | USED | PU | 147620 ACTUAL |

**OWNER(S)**
DB TRANSPORTS LLC
3586 SANGANI BLVD # L307
DIBERVILLE MS 39540-0024

**BENEFICIARY**

**1ST LIENHOLDER**
AXIS TITLE LLC
1 WELLNESS BLVD STE 201
IRMO SC 29063-2873

**DATE:** 09/11/2023

**2ND LIENHOLDER**

**DATE:**

**BRANDS**

**MAIL TO**
AXIS TITLE LLC
1 WELLNESS BLVD STE 201
IRMO SC 29063-2873



LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
         (LIENHOLDER)           (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 ____

2ND LIEN _____ BY _____
         (LIENHOLDER)           (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20 ____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS THE 16TH DAY OF NOVEMBER 20 23

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

**CONTROL NUMBER**
O 05117624

MISSISSIPPI DEPARTMENT OF REVENUE

**VOID IF ALTERED**

***NOTICE: ANY ALTERATION OR ERASURE VOIDS THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW***

Federal and State Law requires that you state the mileage in connection with the transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths)

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**SELLER:**
Signature(s) _____ Printed Name(s) _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths)

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths)

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown at bottom of page.

Name _____ Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (No Tenths)

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

**DEALER OR AGENT:**
Signature(s) _____ Printed Firm Name _____ Date of Sale _____

"I am aware of the above odometer certification made by seller"

**BUYER:**
Signature(s) _____ Printed Name(s) _____

## LIENHOLDER TO BE SHOWN ON NEW TITLE

Lien in favor of _____

whose address is _____

*(Side margin: SCRAPPED, DISMANTLED, OR DESTROYED VEHICLE - This is to be filed in by Vehicle Owner, Certificate of Title must be mailed or delivered to the Mississippi Department of Revenue. I/we hereby warrant that the Vehicle described on the reverse side of this Certificate was scrapped, dismantled, or destroyed on _____, 20___. Owner's Signature _____)*