DocuSign Envelope ID:

# PROMISSORY NOTE AND SECURITY AGREEMENT

Note #: 002-0028406-000

| | | | |
|---|---|---|---|
| Secured Party: | Santander Bank, N.A. | Debtor: | DB Transports LLC |
| Address: | 3 Huntington Quadrangle Ste 101N<br>Melville, NY 11747 | Address: | 5043 Fairbury Way<br>Diberville MS 39540 |
| Tel: | 631-531-0600 | Tel: | |
| Dealer/ Seller | B and S Transport, LLC*<br>704 Murray Dr<br>Columbia TN 38401 | Location of Collateral (if different) | 3586 Sangani Blvd<br>D'IBERVILLE MS 39540 |
| | | Loan Amount | $ SEE ATTACHED SCHEDULE(S) |

**Collateral Description:** SEE ATTACHED SCHEDULE(S)

1. Promise To Pay. FOR VALUE RECEIVED, Debtor promises to pay to the order of the above named secured party or assigns (the "Secured Party") the Loan Amount(s) plus interest, in installments, payable per the ATTACHED SCHEDULE(S), commencing thirty (30) days after the date set forth on any Schedule(s) attached hereto and forming part of this Promissory Note and Security Agreement (the "Note"), or such later date as designated in writing by the Secured Party, and continuing on a like day in each month thereafter. All payments shall be made to the address of Secured Party or such other address designated in writing by Secured Party.

2. Grant of Security Interest. To secure the prompt payment by Debtor of this Note and the prompt payment and performance by Debtor of every liability, obligation and indebtedness of Debtor to Secured Party whether now existing or hereafter arising (collectively, the "Obligations"), Debtor hereby grants a security interest to Secured Party in and to the vehicle/equipment described on any Schedule annexed hereto (the "Vehicle/Equipment"), together with all related equipment ("Equipment" or "Additional Equipment") and all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on the Vehicle or Equipment, as well as all contract and warranty rights and all proceeds thereof, including, but not limited to, insurance proceeds (collectively, "Collateral"). Debtor will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary or appropriate in Secured Party's sole and absolute discretion to perfect or maintain the security interest herein granted and its priority. To the extent permitted by applicable law, Secured Party is authorized to sign and file such Motor Vehicle Documents and UCC Documents and any other security documents as Debtor's attorney-in-fact.

3. Location of Vehicle and/or Equipment. Debtor will garage the Vehicle and all Equipment and other Collateral at the location set forth above or on any Schedule (the "Location"), and shall not change the garage location of the Vehicle/Equipment from the Location unless Debtor (i) gives Secured Party written notice of such change and the new location at least thirty (30) days prior to removal and (ii) executes such documents as Secured Party requires to continue the perfection and priority of its security interest.

4. Representations and Warranties. Debtor represents and warrants that:

4.1 This Note and all other agreements and instruments executed in connection herewith are valid and binding upon and enforceable against Debtor in accordance with their respective terms.

4.2 Debtor has good and merchantable title to and sole ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Secured Party. The security interest granted by Debtor to Secured Party in the Collateral constitutes a valid first perfected lien and security interest in the Collateral.

4.3 Debtor is not in violation of any law, statute, regulation or ordinance of any governmental entity or authority, which could in any respect materially and adversely affect the Collateral or Debtor's business, property, assets, operations or condition, financial or otherwise.

4.4 Debtor is not in default in any material respect under any indenture, loan agreement, mortgage, lease, deed of trust or other agreement relating to the borrowing of monies to which Debtor is a party, or by which Debtor or Debtor's assets may be bound.

4.5 Debtor has delivered to Secured Party Debtor's financial statements as part of Secured Party's credit review. Such financial statements fully and fairly present the assets, liabilities and financial condition of Debtor as of the respective dates thereof and for the periods covered thereby; there are no omissions of other facts or circumstances which are or may be material and there has been no material adverse change in the financial condition of Debtor or its shareholders since the date of such financial statements.

4.6 There are no actions or proceedings which are pending or threatened in any court or before any governmental agency or instrumentality against Debtor, its assets, or the Collateral, which could materially adversely affect Debtor or the Collateral.

4.7 Debtor has filed or has obtained extensions for the filing of all federal, state and local tax returns and other reports it is required by law to file and has paid all taxes, assessments and charges reflected thereon that are due and payable and has reserved funds or made adequate provision for the payment of such taxes, assessments and charges accruing but not yet payable.

4.8 Debtor operates a commercial business and all Vehicles and/or Equipment financed herein will be used by Debtor solely for Debtor's usual and customary business, agricultural, or commercial purposes as presently conducted.

4.9 All representations and warranties of Debtor are true at the time of Debtor's execution of this Note and shall survive the execution, delivery and acceptance hereof.

5. Covenants of Debtor. Debtor covenants that:

5.1 Preservation of Partnership/Corporate Existence. If Debtor is a partnership, a limited liability company, or a corporation, it will preserve and maintain its partnership, company, or corporate existence and good standing in each State where it conducts business.

5.2 Liens. Debtor will not create or permit to exist any mortgage, pledge, title retention lien, or other lien, encumbrance or security interest with respect to the Collateral, other than encumbrances in favor of Secured Party.

5.3 Insurance. Debtor will, at its own expense, keep all of the Collateral insured for its full replacement value thereof against all risks of loss and damage by policies of insurance issued by companies approved by Secured Party, but in no event shall insurance coverage for a Vehicle require a deductible in excess of $2,500.00 per occurrence. Debtor shall also, at its own expense, maintain such liability insurance policy in



Confidential

amount and issued by such company as shall be approved by Secured Party, but in no event shall the policy limits for insurance coverage be less than: (a) for bodily injury - $250,000.00 per person and $500,000.00 per occurrence; and for property damage - $100,000.00; or (b) $500,000.00 combined single limit. The policies evidencing such insurance shall be duly endorsed in favor of Secured Party and its assigns with such loss payable and additional insured riders as Secured Party may designate and such policies shall be delivered to Secured Party and shall provide for: (a) at least thirty (30) days prior written notice to Secured Party or its assigns of the exercise of any right of cancellation or reduction of coverage; (b) right to cure monetary defaults; and (c) any default, misrepresentation or other breach by Secured Party or Debtor (or others) under this Note or the policy will not affect the insurance insofar as the interests of or any loss payee are concerned. Should Debtor and its assigns fail to furnish Secured Party with such insurance, Secured Party shall have the right, but not the obligation, to effect same to protect Secured Party's interest, which may or may not cover Debtor's interest in the Collateral, and charge the cost thereof to Debtor, together with interest thereon at eighteen percent (18%) per annum but in no event more than the maximum rate permitted by law. Such cost, including interest, shall be additional Obligations hereunder and secured by the Collateral. If the Collateral is stolen, lost, damaged or destroyed, Secured Party shall have no liability with respect to any theft, loss, damage, destruction or injury, and Secured Party's sole obligation hereunder shall be to choose either to (i) allow part or all of any insurance proceeds received on account of such theft, loss, damage or destruction ("Insurance Loss Proceeds") to be used by Debtor to repair the Collateral and/or (ii) to credit Debtor's account with part or all of the net Insurance Loss Proceeds . Whether or not the Collateral is insured, Debtor is obligated to continue to pay Secured Party for the Obligations owing under this Note even if the Collateral is stolen, lost, damaged or destroyed. In the event that any insurance payment is sent by an insurer, its broker, agent or representative to Debtor on account of theft, loss of, damage, destruction to the Collateral, Debtor shall immediately forward such insurance payment to Secured Party and shall not deposit or cash any such insurance payment without the prior express written consent of Secured Party. Debtor shall (i) file with Secured Party a complete report concerning any accident, damage or theft occurring to the Vehicle/Equipment within twenty-four (24) hours after said occurrence; (ii) cooperate with Secured Party and any insurers in the investigation, prosecution and defense of all claims resulting from the use or operation of the Vehicle and/or Equipment, and (iii) take all action necessary to comply with the provisions of any policy of insurance relating to the Vehicle/Equipment or the operation thereof. Debtor hereby appoints Secured Party as Debtor's attorney-in-fact to adjust all insurance claims and endorse all checks and drafts in settlement thereof.

5.4 Financial Information. Debtor shall prepare and, upon request, furnish to Secured Party such quarterly and annual financial statements and such other financial information as Secured Party shall from time to time request.

5.5 Litigation. Debtor will notify Secured Party in writing, promptly upon learning thereof, of the institution of any suit or administrative proceeding against Debtor with respect to the Collateral, whether directly or indirectly against the Collateral, whether or not the claim is considered by Debtor to be covered by insurance, and of the institution of any suit or administrative proceeding which could materially and adversely affect the operations, financial condition or business of Debtor or Secured Party's security interest in the Collateral.

5.6 Payment of Taxes and Claims. Debtor will duly pay and discharge when due and payable, all taxes (including, without limitation, all sales taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or otherwise.

5.7 Inspection. Debtor will permit Secured Party, its officers, employees and/or agents, at all times, during normal business hours to enter into and upon any premises where the Vehicle and/or Equipment are located for the purpose of inspecting the Vehicle and/or Equipment or otherwise protecting the interests of Secured Party therein.

5.8 Maintenance of Collateral. Debtor will maintain the Collateral in good condition and repair (normal wear and tear excepted) and pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Vehicle/Equipment is located.

5.9 Landlord and Mortgagee Waivers. If requested by Secured Party, Debtor shall obtain and deliver to Secured Party any and all landlord's and mortgagee's waivers, estoppel, certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral.

5.10 Dispositions of Assets. Debtor shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, the Collateral.

5.11 Compliance with Law; Licenses and Permits. Debtor shall comply with all applicable laws with respect to the Vehicle/Equipment and its operation and use and permit the Vehicle/Equipment to be operated only by carefully selected licensed drivers. Debtor shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of the Vehicle and/or Equipment.

5.12 Registration and Inspection; Debtor shall REGISTER AND TITLE the Vehicle/Equipment in conformity with the laws of the state of operation and shall pay all costs thereof. SUCH REGISTRATION AND TITLE SHALL INCLUDE THE PERFECTION OF THE SECURITY INTEREST FOR THE BENEFIT OF THE SECURED PARTY as set forth in Section 2 above. Debtor shall provide to Secured Party, within sixty (60) days after the date of this Note, a copy of such filing, including a copy of the motor vehicle registration for the Vehicle. If such registration does not contain the proper license plate number of the Vehicle, Debtor will provide such license plate number to Secured Party within such 60-day period. *Failure to register, title and perfect the security interest on behalf of the Secured Party within such 60-day period shall constitute an Event of Default and shall be subject to Secured Party's rights and remedies under Section 7 of this Note.* In all cases, Debtor shall, at its own expense, (a) have the Vehicle/Equipment (including all Additional Equipment) timely inspected in accordance with all applicable laws and (b) make any and all repairs that are necessary to enable the Vehicle/Equipment (and such Additional Equipment) to pass such inspections.

6. Prepayment. Debtor may prepay this Note in full and not in part on any payment date by payment of an amount equal to (i) all charges and fees then due and owing to Secured Party, (ii) all payments of principal and interest due and owing to Secured Party to the date of prepayment and (iii) the present value of all payments for the then remaining portion of the term hereof discounted at a rate (which Debtor and Secured Party agree is reasonable) equal to the discount rate of the Federal Reserve Bank of New York in effect on the date of this Note.

7. Events of Default; Rights and Remedies Upon Default.

7.1 Event of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default":

7.1.1 Debtor fails to pay any installment of this Note or any other Obligations on the due date thereof, including failing to pay upon maturity;

7.1.2 Debtor fails to pay any other obligation due Secured Party or any of Secured Party's affiliates, however arising;

7.1.3 Debtor fails or neglects to perform or observe any other term, covenant, warranty or representation contained in this Note or any other agreement, instrument or document with or for the benefit of Secured Party (other than for the payment of money) and the same is not cured to Secured Party's reasonable satisfaction within ten (10) days after the giving of notice by Secured Party to Debtor of such failure;

7.1.4 The Collateral or a significant part of Debtor's other asset (as determined by Secured Party in its sole and absolute discretion) are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors, or the Collateral is damaged or destroyed, and in any such case, the same is not cured within thirty (30) days thereafter;

DocuSign Envelope ID

7.1.5 There shall be a judgment or judgments against Debtor for an amount in excess of $10,000 singly or in the aggregate;

7.1.6 An application is made by Debtor or any person other than Debtor for the appointment of a receiver, trustee or custodian for the Collateral or any other of Debtor's assets and in the case of an application made by a third party, the same is not dismissed within sixty (60) days after the application therefor;

7.1.7 A petition under any provision of the Bankruptcy Code or any similar law or regulation shall be filed by or against Debtor or any of its affiliates, and in the case of any petition filed by any third party, such petition is not dismissed within forty-five (45) days of such filing or an Order for Relief or similar order is entered against Debtor, or Debtor or any of its affiliates makes an assignment for the benefit of its creditors or any case or proceeding is filed by or against Debtor for its dissolution, liquidation, or termination;

7.1.8 Debtor ceases to conduct its business or is enjoined, restrained or in any way prevented by court order from conducting all or any material part of its business affairs, or there is a sale of all or substantially all of the assets of the Debtor or any change in ownership or management of Debtor, or the dissolution, liquidation, merger, consolidation or reorganization of Debtor, without the express prior written consent of Secured Party; or

7.1.9 The death, incarceration, arrest, adjudication of legal incompetence of, or any criminal proceeding is brought against, Debtor of any of the Obligations.

7.1.10 Any of the foregoing occurs with respect to any guarantor of the Obligations, or any guarantor of the Obligations defaults under or otherwise breaches any of the terms of his, her or its guaranty of the Obligations or any other agreement, instrument or document with or for the benefit of Secured Party or any of Secured Party's affiliates;

7.2 Acceleration of the Entire Unpaid Balance. Upon and after an Event of Default, the entire unpaid balance of payments under this Note may, at the option of Secured Party and without presentment, demand, notice, protest or legal process of any kind, be declared, and immediately shall become, due and payable.

7.3 Remedies. Upon and after an Event of Default, Secured Party shall have the following rights and remedies:

7.3.1 All of the rights and remedies of a secured party under the Uniform Commercial Code or other applicable law, all of which rights and remedies shall be cumulative, and nonexclusive, to the extent permitted by law, in addition to any other rights and remedies contained in this Note;

7.3.2 The right to the extent permitted by law and at Debtor's expense, to enter upon the Location and any other premises of Debtor, or any other place or places where the Collateral is located and kept, without any obligation to pay rent to Debtor, through self-help and without judicial process, without first obtaining a final judgment or giving Debtor notice and opportunity for a hearing on the validity of Secured Party's claim, and remove the Collateral therefrom to the premises of Secured Party or any agent of Secured Party, for such time as Secured Party may desire in order to effectively collect or liquidate the Collateral. At Secured Party's request Debtor shall, at its own expense, assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party, in its sole discretion.

7.3.3 The right to sell or otherwise dispose of all or any Collateral in its then condition, or after any further manufacturing or processing thereof at public or private sale or sales, with such notice as may be required by law, in lots or in bulk, for cash or on credit, all as Secured Party, in its sole discretion, may deem advisable; such sales may be adjourned from time to time with or without notice. Secured Party shall have the right to conduct such sales on Debtor's premises or elsewhere and shall have the right to use Debtor's premises without charge for such sales for such time or times as Secured Party may see fit. Secured Party is hereby granted license or other right to use, without charge, Debtor's labels, patents, copyrights, rights of use of any matter, or any property of a similar nature, as it pertains to the Collateral, in advertising for sale and selling any Collateral and Debtor's rights under all licenses and all franchise agreements shall inure to Secured Party's benefit. Secured Party may purchase all or any part of the Collateral at public or, if permitted by law, private, sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be applied first to all costs, expenses and attorney's fees and expenses incurred by Secured Party for collection and enforcement of this Note and for acquisition, repair, completion, protection, removal, storage, sale and delivery of the Collateral; second to late charges; third to interest due upon any of the Obligations; and fourth to the principal balance of the Obligations. If any deficiency shall arise, Debtor shall remain liable to Secured Party therefor. If any excess shall arise, it shall, after ninety (90) days, be paid over to Debtor.

7.3.4 The right to take such other and further action as Secured Party may at law or in equity be entitled to take in Secured Party's sole and absolute discretion.

7.4 Notice. Any notice required to be given by Secured Party of a sale, lease, other disposition of the Collateral or any other intended action by Secured Party, may be given in any manner provided for delivery of notices in this Note, ten (10) days prior to such proposed action, and, if so given, shall constitute commercially reasonable and fair notice thereof to Debtor.

8. Default Interest; Administrative Charges.

8.1 Default Interest. Commencing with the day after any installment(s) or the entire unpaid balance of payment (by acceleration, maturity, or otherwise) hereunder shall have become due and payable, such installment(s) or the entire unpaid balance of payments (by acceleration, maturity, or otherwise) (as the case may be) shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the maximum rate permitted by law.

8.2 Administrative Charges. If Debtor fails to make any installment within ten (10) days after the same is due, Debtor shall pay a late charge of five percent (5%) of the unpaid installment, but in no event higher than the maximum rate permitted by law, and such amount shall be payable upon demand. Such payment is not interest or for the use of money, but is used to offset Secured Party's administrative costs occasioned by such delay.

8.3 Costs and Expenses. Debtor shall pay (or at Secured Party's option, reimburse Secured Party for) all of Secured Party's fees, costs and expenses (including, but not limited to, attorneys' fees and expenses) incurred in connection with the enforcement of this Note and the transactions contemplated hereby and the collection of the Obligations (regardless of whether any action is commenced and if so commenced, whether incurred at trial or appeal, and whether incurred prior to or after the bankruptcy of Debtor). Debtor shall also pay (or at Secured Party's option, reimburse Secured Party for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Note. In addition, Debtor shall pay Secured Party a disposition charge of $195.00 upon termination of a Schedule as reimbursement for all expenses associated with the release and transfer of liens and title with respect to the specific collateral contained within the particular Schedule.

9. Miscellaneous.

9.1 Maximum Rate. Interest charged hereunder shall not exceed the maximum rate permitted by law. Accordingly, if, for any reason, Debtor is required to pay, or has paid, interest at a rate in excess of the highest rate of interest which may be charged by Secured Party or which Debtor may legally contract to pay under applicable law, then the interest rate shall be deemed to be reduced, automatically and immediately, to such maximum rate, and interest payable hereunder shall be computed and paid at such maximum rate and the portion of all prior payments of interest in excess of such maximum rate shall be deemed to have been prepayments of outstanding principal and applied to the installments in the inverse order of their maturities.

DocuSign Envelope IE

9.2 Payments.

9.2.1 All payments under this Note shall be made by Debtor to Secured Party at its address set forth above (or such other place as the holder hereof shall designate to Debtor in writing) in lawful money of the United States in immediately available funds and without defense, set-off or counterclaim and without deduction for any present or future income, stamp, sales or other taxes, levies, imposts, deductions, charges or withholdings whatsoever imposed, assessed, levied or collected by or for the benefit of any jurisdiction or taxing authority. In addition, Debtor shall pay any and all taxes (stamp or otherwise) payable or determined to be payable in connection with the execution and delivery of this Note, and on all payments to be made by Debtor hereunder (other than Secured Party's income taxes) and all taxes payable in connection with or related to the Collateral.

9.2.2 All payments under this Agreement shall be applied first to costs and expenses of Secured Party incurred in connection with this Note, second to late charges, third to interest, and fourth to the principal balance and any other amounts due under this Note.

9.2.3 Secured Party shall not be deemed to have waived any rights or remedies hereunder or otherwise if it accepts any payment or payments from Debtor, marked payment "in full". Any such payment or payments that Secured Party accepts from Debtor shall be deemed to have been accepted by Secured Party without prejudice and under protest with full reservation of Secured Party's rights and remedies under this Note and applicable law.

9.3 Further Assurances. Debtor shall at any time and from time to time upon the written request of Secured Party, execute and deliver such further agreements, instruments and documents and do such further acts and things as Secured Party may reasonably request in order to effect the purposes of this Note.

9.4 Modification of Note. This Note may not be modified, altered or amended, except by an agreement in writing signed by Debtor and Secured Party.

9.5 Assignment. Debtor may not sell, assign or transfer this Note, or any portion thereof, including, without limitation, Debtor's obligations or duties hereunder. Debtor hereby consents to Secured Party's sale, assignment, transfer or other disposition at any time, of this Note, its security interest, or any portion thereof, including, without limitation, Secured Party's rights, title, interests, remedies and powers hereunder. To the extent permitted by applicable law, Debtor agrees not raise any claim, defense or offset arising out of this Note or otherwise which it may have against Secured Party as a defense, counterclaim or offset to any action by any assignee of Debtor hereunder.

9.6 Waiver by Debtor. Debtor hereby expressly waives presentment for payment, demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and all lack of diligence or delays in collection or enforcement of this Note.

9.7 Waiver by Secured Party. Secured Party's failure, at any time or times hereafter, to require strict performance by Debtor of any provision of this Note shall not waive, affect or diminish any right of Secured Party thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Secured Party of any Event of Default by Debtor under this Note shall not suspend, waive or affect any other Event of Default by Debtor under this Note, whether the same is prior or subsequent thereto and whether of the same or of a different type. None of the undertakings, agreements, warranties, covenants and representations of Debtor contained in this Note and no Event of Default by Debtor under this Note shall be deemed to have been suspended or waived by Secured Party, unless such suspension or waiver is by an instrument in writing specifying such suspension or waiver and signed by an officer or other authorized person of Secured Party and directed to Debtor.

9.8 Severability. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of this Note.

9.9 Parties. This Note shall be binding upon and inure to the benefit of the successors and assigns of Debtor (as limited by paragraph 9.5) and Secured Party.

9.10 Governing Law. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN DELIVERED AT AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW RULES.

9.11 Venue. DEBTOR IRREVOCABLY CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT UNDER, ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT, MAY BE BROUGHT IN ANY COURT OF THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK. DEBTOR, BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF ANY COMPLAINT, SUMMONS, NOTICE OR OTHER PROCESS RELATING TO SUCH ACTION OR PROCEEDING BY DELIVERY THEREOF TO IT BY HAND OR BY MAIL IN THE MANNER PROVIDED FOR IN THIS NOTE. DEBTOR HEREBY EXPRESSLY AND IRREVOCABLY WAIVES ANY CLAIM OR DEFENSE IN ANY SUCH ACTION OR PROCEEDING BASED ON ANY ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS OR ANY SIMILAR BASIS. DEBTOR SHALL NOT BE ENTITLED IN ANY SUCH ACTION OR PROCEEDING TO ASSERT ANY DEFENSE GIVEN OR ALLOWED UNDER THE LAWS OF ANY STATE OTHER THAN THE STATE OF NEW YORK UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW YORK. NOTHING IN THIS AGREEMENT SHALL AFFECT OR IMPAIR IN ANY MANNER OR TO ANY EXTENT THE RIGHT OF SECURED PARTY TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST DEBTOR IN ANY JURISDICTION OR TO SERVE PROCESS IN ANY MANNER PERMITTED BY LAW.

9.12 Waiver of Jury Trial. DEBTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY AGREEMENT, INSTRUMENT OR DOCUMENT EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR THEREWITH.

9.13 Notice. Any notice required hereunder shall be in writing, and shall be deemed to have been validly served when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, such as Federal Express or United Parcel Service, with proper postage prepaid, or when deposited in the United States mail, as first class, certified or registered mail postage prepaid, and addressed to the party to be notified at the address of such party set forth in this Note; provided, however, that notice to the Secured Party shall be deemed given only upon actual receipt. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Debtor agrees to keep Secured Party informed at all times of Debtor's current address.

9.14 Complete Agreement. This Note, the Schedule(s), Riders, and the other agreements, instruments and documents referred to herein are the complete agreement of the parties with respect to the subject matter hereof and thereof and each of which may be executed in counterparts.

9.15 Sections Titles. The Section titles contained in this Note are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

IN WITNESS WHEREOF, this Note has been duly executed as of the ______ day of 06/29/2022 ______, ____.

| | |
|---|---|
| Debtor: DB Transports LLC | Secured Party: Santander Bank, N.A. |
| DocuSigned by: | DocuSigned by: |
| By :X Donshekie Barnett | By: Michael J Paz |
| 5AB...B47E... | 5A5... |
| Title: | Title: Senior Vice President |



Confidential

DocuSign Envelope IE

**SCHEDULE NO** 003 **OF PROMISSORY NOTE AND SECURITY AGREEMENT NO.** 002-0028406

Dated 06/21/2023 between **SANTANDER BANK, N.A. ("Secured Party") and:**
DB Transport LLC ("Debtor")

General purpose for which Collateral listed herein is/are to be used:

| Year | Make/Model | Vehicle/Equipment ID # | Body & Additional Equipment with serial number | Loan Amount | Initial Payment | Monthly Payment | Rem Pymts | Residual Value |
|---|---|---|---|---|---|---|---|---|
| 2024 | GMC Sierra 2500 | 1GT49PEY2RF158350 | | 89995.00 | 0.00 | 1620.00 | | |
| | | | TOTALS | 89995.00 | 3291.29 | 1620.00 | 72 | 0.00 |

PRINCIPAL BUSINESS ADDRESS: 5043 Fairbury Way
Diberville, Mississippi 39540

BILLING ADDRESS: 5043 Fairbury Way Diberville MS 39540

GARAGING ADDRESS: 5043 Fairbury Way D'IBERVILLE MS 39540

Effective this ______ day of 06/21/2023, ______, this Schedule is hereby made a part of Promissory Note and Security Agreement No. 002-0028406 (the "Note"), dated __________ between the parties hereto (and shall be in addition to any Schedule) now attached to said Note. Capitalized terms contained herein and not otherwise defined shall have the meanings ascribed to such terms in the Note.

Debtor: DB Transport LLC
DocuSigned by:
By :X Donshekie Barrett
5ABC70C6046B47E...
Name: Donshekie Barrett
Title: Member

Secured Party: Santander Bank, N.A.
DocuSigned by:
By: Michael J. Paez
5A5455C3B45F40E...
Name: Michael J. Paez
Title: Senior Vice President



Initials: DS DB

Confidential

Confidential

ATTACHMENT 2

Allonge

Reference is made to Schedule No. **003** in the amount of **$89,995.00** dated **June 21, 2023** as a schedule to Promissory Note and Security Agreement No. from **DB TRANSPORT LLC** (the "Note") payable to the order of Santander Bank, N.A. ("Assignor"), as successor to Sovereign Bank, N.A. It is intended that this Allonge be attached to and made a permanent part of the Note.

Pay to the order of First Commerce, LLC ("Assignee"), without recourse, representations or warranties of any kind.

Executed this 9 day of January 2025.

By: Michael Lockery
Its: Director

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1GT49PEY2RF158350 | GMC | 2024 | SIERRA | PK | MS1470615296 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 08/14/2026 | 06/26/2023 | 8 | NEW | PU | 7 ACTUAL |

**OWNER(S)**

DB TRANSPORT LLC
5043 FAIRBURY WAY
DIBERVILLE MS 39540-1000

**BRANDS**

**BENEFICIARY**

☐ **Fully Autonomous Vehicle**

**1ST LIENHOLDER**

FIRST COMMERCE, LLC
PO BOX 920
LAKE OSWEGO OR 97034-0152

**DATE:** 12/27/2024

**2ND LIENHOLDER**

**DATE:**

**MAIL TO:**

T7

FIRST COMMERCE, LLC
PO BOX 920
LAKE OSWEGO OR 97034-0152

**LIEN SATISFACTION:** THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

**1ST LIEN** ______________________ (LIENHOLDER) **BY** ______________________ (SIGNATURE AND TITLE)

**THIS** __________ **DAY OF** __________ **20**____

**2ND LIEN** ______________________ (LIENHOLDER) **BY** ______________________ (SIGNATURE AND TITLE)

**THIS** __________ **DAY OF** __________ **20**____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE 14TH DAY OF AUGUST 20 26

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1. Mississippi Code of 1972. and subject to the provisions thereof.

CONTROL NUMBER

O 07294139

MISSISSIPPI DEPARTMENT OF REVENUE

VOID IF ALTERED