# PROMISSORY NOTE AND SECURITY AGREEMENT

**Note #:**

| | | | |
|---|---|---|---|
| Secured Party: | **Santander Bank, N.A.** | Debtor: | DB Transports LLC |
| Address: | **3 Huntington Quadrangle Ste 101N** | Address: | 5043 Fairbury Way |
| | **Melville, NY 11747** | | Diberville MS 39540 |
| Tel: | **631-531-0600** | Tel: | 662-695-1030 |
| Dealer/ Seller | B and S Transport, LLC* | Location of Collateral (if different) | 3586 Sangani Blvd |
| | 704 Murray Dr | | D'IBERVILLE MS 39540 |
| | Columbia TN 38401 | Loan Amount | **$** SEE ATTACHED SCHEDULE(S) |

**Collateral Description:** SEE ATTACHED SCHEDULE(S)

1. Promise To Pay. FOR VALUE RECEIVED, Debtor promises to pay to the order of the above named secured party or assigns (the "Secured Party") the Loan Amount(s) plus interest, in installments, payable per the ATTACHED SCHEDULE(S), commencing thirty (30) days after the date set forth on any Schedule(s) attached hereto and forming part of this Promissory Note and Security Agreement (the "Note"), or such later date as designated in writing by the Secured Party, and continuing on a like day in each month thereafter. All payments shall be made to the address of Secured Party or such other address designated in writing by Secured Party.

2. Grant of Security Interest. To secure the prompt payment by Debtor of this Note and the prompt payment and performance by Debtor of every liability, obligation and indebtedness of Debtor to Secured Party whether now existing or hereafter arising (collectively, the "Obligations"), Debtor hereby grants a security interest to Secured Party in and to the vehicle/equipment described on any Schedule annexed hereto (the "Vehicle/Equipment"), together with all related equipment ("Equipment" or "Additional Equipment") and all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on the Vehicle or Equipment, as well as all contract and warranty rights and all proceeds thereof, including, but not limited to, insurance proceeds (collectively, "Collateral"). Debtor will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary or appropriate in Secured Party's sole and absolute discretion to perfect or maintain the security interest herein granted and its priority. To the extent permitted by applicable law, Secured Party is authorized to sign and file such Motor Vehicle Documents and UCC Documents and any other security documents as Debtor's attorney-in-fact.

3. Location of Vehicle and/or Equipment. Debtor will garage the Vehicle and all Equipment and other Collateral at the location set forth above or on any Schedule (the "Location"), and shall not change the garage location of the Vehicle/Equipment from the Location unless Debtor (i) gives Secured Party written notice of such change and the new location at least thirty (30) days prior to removal and (ii) executes such documents as Secured Party requires to continue the perfection and priority of its security interest.

4. Representations and Warranties. Debtor represents and warrants that:

4.1 This Note and all other agreements and instruments executed in connection herewith are valid and binding upon and enforceable against Debtor in accordance with their respective terms.

4.2 Debtor has good and merchantable title to and sole ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Secured Party. The security interest granted by Debtor to Secured Party in the Collateral constitutes a valid first perfected lien and security interest in the Collateral.

4.3 Debtor is not in violation of any law, statute, regulation or ordinance of any governmental entity or authority, which could in any respect materially and adversely affect the Collateral or Debtor's business, property, assets, operations or condition, financial or otherwise.

4.4 Debtor is not in default in any material respect under any indenture, loan agreement, mortgage, lease, deed of trust or other agreement relating to the borrowing of monies to which Debtor is a party, or by which Debtor or Debtor's assets may be bound.

4.5 Debtor has delivered to Secured Party Debtor's financial statements as part of Secured Party's credit review. Such financial statements fully and fairly present the assets, liabilities and financial condition of Debtor as of the respective dates thereof and for the periods covered thereby; there are no omissions of other facts or circumstances which are or may be material and there has been no material adverse change in the financial condition of Debtor or its shareholders since the date of such financial statements.

4.6 There are no actions or proceedings which are pending or threatened in any court or before any governmental agency or instrumentality against Debtor, its assets, or the Collateral, which could materially adversely affect Debtor or the Collateral.

4.7 Debtor has filed or has obtained extensions for the filing of all federal, state and local tax returns and other reports it is required by law to file and has paid all taxes, assessments and charges reflected thereon that are due and payable and has reserved funds or made adequate provision for the payment of such taxes, assessments and charges accruing but not yet payable.

4.8 Debtor operates a commercial business and all Vehicles and/or Equipment financed herein will be used by Debtor solely for Debtor's usual and customary business, agricultural, or commercial purposes as presently conducted.

4.9 All representations and warranties of Debtor are true at the time of Debtor's execution of this Note and shall survive the execution, delivery and acceptance hereof.

5. Covenants of Debtor. Debtor covenants that:

5.1 Preservation of Partnership/Corporate Existence. If Debtor is a partnership, a limited liability company, or a corporation, it will preserve and maintain its partnership, company, or corporate existence and good standing in each State where it conducts business.

5.2 Liens. Debtor will not create or permit to exist any mortgage, pledge, title retention lien, or other lien, encumbrance or security interest with respect to the Collateral, other than encumbrances in favor of Secured Party.

5.3 Insurance. Debtor will, at its own expense, keep all of the Collateral insured for its full replacement value thereof against all risks of loss and damage by policies of insurance issued by companies approved by Secured Party, but in no event shall insurance coverage for a Vehicle require a deductible in excess of $2,500.00 per occurrence. Debtor shall also, at its own expense, maintain such liability insurance policy in



Confidential

DocuSign Envelope I

amount and issued by such company as shall be approved by Secured Party, but in no event shall the policy limits for insurance coverage be less than: (a) for bodily injury - $250,000.00 per person and $500,000.00 per occurrence; and for property damage - $100,000.00; **or** (b) $500,000.00 combined single limit. The policies evidencing such insurance shall be duly endorsed in favor of Secured Party and its assigns with such loss payable and additional insured riders as Secured Party may designate and such policies shall be delivered to Secured Party and shall provide for: (a) at least thirty (30) days prior written notice to Secured Party or its assigns of the exercise of any right of cancellation or reduction of coverage; (b) right to cure monetary defaults; and (c) any default, misrepresentation or other breach by Secured Party or Debtor (or others) under this Note or the policy will not affect the insurance insofar as the interests of or any loss payee are concerned. Should Debtor and its assigns fail to furnish Secured Party with such insurance, Secured Party shall have the right, but not the obligation, to effect same to protect Secured Party's interest, which may or may not cover Debtor's interest in the Collateral, and charge the cost thereof to Debtor, together with interest thereon at eighteen percent (18%) per annum but in no event more than the maximum rate permitted by law. Such cost, including interest, shall be additional Obligations hereunder and secured by the Collateral. If the Collateral is stolen, lost, damaged or destroyed, Secured Party shall have no liability with respect to any theft, loss, damage, destruction or injury, and Secured Party's sole obligation hereunder shall be to choose either to (i) allow part or all of any insurance proceeds received on account of such theft, loss, damage or destruction ("Insurance Loss Proceeds") to be used by Debtor to repair the Collateral and/or (ii) to credit Debtor's account with part or all of the net Insurance Loss Proceeds . Whether or not the Collateral is insured, Debtor is obligated to continue to pay Secured Party for the Obligations owing under this Note even if the Collateral is stolen, lost, damaged or destroyed. In the event that any insurance payment is sent by an insurer, its broker, agent or representative to Debtor on account of theft, loss of, damage, destruction to the Collateral, Debtor shall immediately forward such insurance payment to Secured Party and shall not deposit or cash any such insurance payment without the prior express written consent of Secured Party. Debtor shall (i) file with Secured Party a complete report concerning any accident, damage or theft occurring to the Vehicle/Equipment within twenty-four (24) hours after said occurrence; (ii) cooperate with Secured Party and any insurers in the investigation, prosecution and defense of all claims resulting from the use or operation of the Vehicle and/or Equipment, and (iii) take all action necessary to comply with the provisions of any policy of insurance relating to the Vehicle/Equipment or the operation thereof. Debtor hereby appoints Secured Party as Debtor's attorney-in-fact to adjust all insurance claims and endorse all checks and drafts in settlement thereof.

5.4 Financial Information. Debtor shall prepare and, upon request, furnish to Secured Party such quarterly and annual financial statements and such other financial information as Secured Party shall from time to time request.

5.5 Litigation. Debtor will notify Secured Party in writing, promptly upon learning thereof, of the institution of any suit or administrative proceeding against Debtor with respect to the Collateral, whether directly or indirectly against the Collateral, whether or not the claim is considered by Debtor to be covered by insurance, and of the institution of any suit or administrative proceeding which could materially and adversely affect the operations, financial condition or business of Debtor or Secured Party's security interest in the Collateral.

5.6 Payment of Taxes and Claims. Debtor will duly pay and discharge when due and payable, all taxes (including, without limitation, all sales taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or otherwise.

5.7 Inspection. Debtor will permit Secured Party, its officers, employees and/or agents, at all times, during normal business hours to enter into and upon any premises where the Vehicle and/or Equipment are located for the purpose of inspecting the Vehicle and/or Equipment or otherwise protecting the interests of Secured Party therein.

5.8 Maintenance of Collateral. Debtor will maintain the Collateral in good condition and repair (normal wear and tear excepted) and pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Vehicle/Equipment is located.

5.9 Landlord and Mortgagee Waivers. If requested by Secured Party, Debtor shall obtain and deliver to Secured Party any and all landlord's and mortgagee's waivers, estoppel, certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral.

5.10 Dispositions of Assets. Debtor shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, the Collateral.

5.11 Compliance with Law; Licenses and Permits. Debtor shall comply with all applicable laws with respect to the Vehicle/Equipment and its operation and use and permit the Vehicle/Equipment to be operated only by carefully selected licensed drivers. Debtor shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of the Vehicle and/or Equipment.

5.12 Registration and Inspection; Debtor shall REGISTER AND TITLE the Vehicle/Equipment in conformity with the laws of the state of operation and shall pay all costs thereof. SUCH REGISTRATION AND TITLE SHALL INCLUDE THE PERFECTION OF THE SECURITY INTEREST FOR THE BENEFIT OF THE SECURED PARTY as set forth in Section 2 above. Debtor shall provide to Secured Party, within sixty (60) days after the date of this Note, a copy of such filing, including a copy of the motor vehicle registration for the Vehicle. If such registration does not contain the proper license plate number of the Vehicle, Debtor will provide such license plate number to Secured Party within such 60-day period. *Failure to register, title and perfect the security interest on behalf of the Secured Party within such 60-day period shall constitute an Event of Default and shall be subject to Secured Party's rights and remedies under Section 7 of this Note.* In all cases, Debtor shall, at its own expense, (a) have the Vehicle/Equipment (including all Additional Equipment) timely inspected in accordance with all applicable laws and (b) make any and all repairs that are necessary to enable the Vehicle/Equipment (and such Additional Equipment) to pass such inspections.

6. Prepayment. Debtor may prepay this Note in full and not in part on any payment date by payment of an amount equal to (i) all charges and fees then due and owing to Secured Party, (ii) all payments of principal and interest due and owing to Secured Party to the date of prepayment and (iii) the present value of all payments for the then remaining portion of the term hereof discounted at a rate (which Debtor and Secured Party agree is reasonable) equal to the discount rate of the Federal Reserve Bank of New York in effect on the date of this Note.

7. Events of Default; Rights and Remedies Upon Default.

7.1 Event of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default":

7.1.1 Debtor fails to pay any installment of this Note or any other Obligations on the due date thereof, including failing to pay upon maturity;

7.1.2 Debtor fails to pay any other obligation due Secured Party or any of Secured Party's affiliates, however arising;

7.1.3 Debtor fails or neglects to perform or observe any other term, covenant, warranty or representation contained in this Note or any other agreement, instrument or document with or for the benefit of Secured Party (other than for the payment of money) and the same is not cured to Secured Party's reasonable satisfaction within ten (10) days after the giving of notice by Secured Party to Debtor of such failure;

7.1.4 The Collateral or a significant part of Debtor's other asset (as determined by Secured Party in its sole and absolute discretion) are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors, or the Collateral is damaged or destroyed, and in any such case, the same is not cured within thirty (30) days thereafter;



Confidential

7.1.5 There shall be a judgment or judgments against Debtor for an amount in excess of $10,000 singly or in the aggregate;

7.1.6 An application is made by Debtor or any person other than Debtor for the appointment of a receiver, trustee or custodian for the Collateral or any other of Debtor's assets and in the case of an application made by a third party, the same is not dismissed within sixty (60) days after the application therefor;

7.1.7 A petition under any provision of the Bankruptcy Code or any similar law or regulation shall be filed by or against Debtor or any of its affiliates, and in the case of any petition filed by any third party, such petition is not dismissed within forty-five (45) days of such filing or an Order for Relief or similar order is entered against Debtor, or Debtor or any of its affiliates makes an assignment for the benefit of its creditors or any case or proceeding is filed by or against Debtor for its dissolution, liquidation, or termination;

7.1.8 Debtor ceases to conduct its business or is enjoined, restrained or in any way prevented by court order from conducting all or any material part of its business affairs, or there is a sale of all or substantially all of the assets of the Debtor or any change in ownership or management of Debtor, or the dissolution, liquidation, merger, consolidation or reorganization of Debtor, without the express prior written consent of Secured Party; or

7.1.9 The death, incarceration, arrest, adjudication of legal incompetence of, or any criminal proceeding is brought against, Debtor of any of the Obligations.

7.1.10 Any of the foregoing occurs with respect to any guarantor of the Obligations, or any guarantor of the Obligations defaults under or otherwise breaches any of the terms of his, her or its guaranty of the Obligations or any other agreement, instrument or document with or for the benefit of Secured Party or any of Secured Party's affiliates;

7.2 Acceleration of the Entire Unpaid Balance. Upon and after an Event of Default, the entire unpaid balance of payments under this Note may, at the option of Secured Party and without presentment, demand, notice, protest or legal process of any kind, be declared, and immediately shall become, due and payable.

7.3 Remedies. Upon and after an Event of Default, Secured Party shall have the following rights and remedies:

7.3.1 All of the rights and remedies of a secured party under the Uniform Commercial Code or other applicable law, all of which rights and remedies shall be cumulative, and nonexclusive, to the extent permitted by law, in addition to any other rights and remedies contained in this Note;

7.3.2 The right to the extent permitted by law and at Debtor's expense, to enter upon the Location and any other premises of Debtor, or any other place or places where the Collateral is located and kept, without any obligation to pay rent to Debtor, through self-help and without judicial process, without first obtaining a final judgment or giving Debtor notice and opportunity for a hearing on the validity of Secured Party's claim, and remove the Collateral therefrom to the premises of Secured Party or any agent of Secured Party, for such time as Secured Party may desire in order to effectively collect or liquidate the Collateral. At Secured Party's request Debtor shall, at its own expense, assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party, in its sole discretion.

7.3.3 The right to sell or otherwise dispose of all or any Collateral in its then condition, or after any further manufacturing or processing thereof at public or private sale or sales, with such notice as may be required by law, in lots or in bulk, for cash or on credit, all as Secured Party, in its sole discretion, may deem advisable; such sales may be adjourned from time to time with or without notice. Secured Party shall have the right to conduct such sales on Debtor's premises or elsewhere and shall have the right to use Debtor's premises without charge for such sales for such time or times as Secured Party may see fit. Secured Party is hereby granted license or other right to use, without charge, Debtor's labels, patents, copyrights, rights of use of any matter, or any property of a similar nature, as it pertains to the Collateral, in advertising for sale and selling any Collateral and Debtor's rights under all licenses and all franchise agreements shall inure to Secured Party's benefit. Secured Party may purchase all or any part of the Collateral at public or, if permitted by law, private, sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be applied first to all costs, expenses and attorney's fees and expenses incurred by Secured Party for collection and enforcement of this Note and for acquisition, repair, completion, protection, removal, storage, sale and delivery of the Collateral; second to late charges; third to interest due upon any of the Obligations; and fourth to the principal balance of the Obligations. If any deficiency shall arise, Debtor shall remain liable to Secured Party therefor. If any excess shall arise, it shall, after ninety (90) days, be paid over to Debtor.

7.3.4 The right to take such other and further action as Secured Party may at law or in equity be entitled to take in Secured Party's sole and absolute discretion.

7.4 Notice. Any notice required to be given by Secured Party of a sale, lease, other disposition of the Collateral or any other intended action by Secured Party, may be given in any manner provided for delivery of notices in this Note, ten (10) days prior to such proposed action, and, if so given, shall constitute commercially reasonable and fair notice thereof to Debtor.

8. Default Interest; Administrative Charges.

8.1 Default Interest. Commencing with the day after any installment(s) or the entire unpaid balance of payment (by acceleration, maturity, or otherwise) hereunder shall have become due and payable, such installment(s) or the entire unpaid balance of payments (by acceleration, maturity, or otherwise) (as the case may be) shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the maximum rate permitted by law.

8.2 Administrative Charges. If Debtor fails to make any installment within ten (10) days after the same is due, Debtor shall pay a late charge of five percent (5%) of the unpaid installment, but in no event higher than the maximum rate permitted by law, and such amount shall be payable upon demand. Such payment is not interest or for the use of money, but is used to offset Secured Party's administrative costs occasioned by such delay.

8.3 Costs and Expenses. Debtor shall pay (or at Secured Party's option, reimburse Secured Party for) all of Secured Party's fees, costs and expenses (including, but not limited to, attorneys' fees and expenses) incurred in connection with the enforcement of this Note and the transactions contemplated hereby and the collection of the Obligations (regardless of whether any action is commenced and if so commenced, whether incurred at trial or appeal, and whether incurred prior to or after the bankruptcy of Debtor). Debtor shall also pay (or at Secured Party's option, reimburse Secured Party for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Note. In addition, Debtor shall pay Secured Party a disposition charge of $195.00 upon termination of a Schedule as reimbursement for all expenses associated with the release and transfer of liens and title with respect to the specific collateral contained within the particular Schedule.

9. Miscellaneous.

9.1 Maximum Rate. Interest charged hereunder shall not exceed the maximum rate permitted by law. Accordingly, if, for any reason, Debtor is required to pay, or has paid, interest at a rate in excess of the highest rate of interest which may be charged by Secured Party or which Debtor may legally contract to pay under applicable law, then the interest rate shall be deemed to be reduced, automatically and immediately, to such maximum rate, and interest payable hereunder shall be computed and paid at such maximum rate and the portion of all prior payments of interest in excess of such maximum rate shall be deemed to have been prepayments of outstanding principal and applied to the installments in the inverse order of their maturities.

9.2 Payments.

9.2.1 All payments under this Note shall be made by Debtor to Secured Party at its address set forth above (or such other place as the holder hereof shall designate to Debtor in writing) in lawful money of the United States in immediately available funds and without defense, set-off or counterclaim and without deduction for any present or future income, stamp, sales or other taxes, levies, imposts, deductions, charges or withholdings whatsoever imposed, assessed, levied or collected by or for the benefit of any jurisdiction or taxing authority. In addition, Debtor shall pay any and all taxes (stamp or otherwise) payable or determined to be payable in connection with the execution and delivery of this Note, and on all payments to be made by Debtor hereunder (other than Secured Party's income taxes) and all taxes payable in connection with or related to the Collateral.

9.2.2 All payments under this Agreement shall be applied first to costs and expenses of Secured Party incurred in connection with this Note, second to late charges, third to interest, and fourth to the principal balance and any other amounts due under this Note.

9.2.3 Secured Party shall not be deemed to have waived any rights or remedies hereunder or otherwise if it accepts any payment or payments from Debtor, marked payment "in full". Any such payment or payments that Secured Party accepts from Debtor shall be deemed to have been accepted by Secured Party without prejudice and under protest with full reservation of Secured Party's rights and remedies under this Note and applicable law.

9.3 Further Assurances. Debtor shall at any time and from time to time upon the written request of Secured Party, execute and deliver such further agreements, instruments and documents and do such further acts and things as Secured Party may reasonably request in order to effect the purposes of this Note.

9.4 Modification of Note. This Note may not be modified, altered or amended, except by an agreement in writing signed by Debtor and Secured Party.

9.5 Assignment. Debtor may not sell, assign or transfer this Note, or any portion thereof, including, without limitation, Debtor's obligations or duties hereunder. Debtor hereby consents to Secured Party's sale, assignment, transfer or other disposition at any time, of this Note, its security interest, or any portion thereof, including, without limitation, Secured Party's rights, title, interests, remedies and powers hereunder. To the extent permitted by applicable law, Debtor agrees not raise any claim, defense or offset arising out of this Note or otherwise which it may have against Secured Party as a defense, counterclaim or offset to any action by any assignee of Debtor hereunder.

9.6 Waiver by Debtor. Debtor hereby expressly waives presentment for payment, demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and all lack of diligence or delays in collection or enforcement of this Note.

9.7 Waiver by Secured Party. Secured Party's failure, at any time or times hereafter, to require strict performance by Debtor of any provision of this Note shall not waive, affect or diminish any right of Secured Party thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Secured Party of any Event of Default by Debtor under this Note shall not suspend, waive or affect any other Event of Default by Debtor under this Note, whether the same is prior or subsequent thereto and whether of the same or of a different type. None of the undertakings, agreements, warranties, covenants and representations of Debtor contained in this Note and no Event of Default by Debtor under this Note shall be deemed to have been suspended or waived by Secured Party, unless such suspension or waiver is by an instrument in writing specifying such suspension or waiver and signed by an officer or other authorized person of Secured Party and directed to Debtor.

9.8 Severability. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of this Note.

9.9 Parties. This Note shall be binding upon and inure to the benefit of the successors and assigns of Debtor (as limited by paragraph 9.5) and Secured Party.

9.10 Governing Law. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN DELIVERED AT AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW RULES.

9.11 Venue. DEBTOR IRREVOCABLY CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT UNDER, ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT, MAY BE BROUGHT IN ANY COURT OF THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK. DEBTOR, BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF ANY COMPLAINT, SUMMONS, NOTICE OR OTHER PROCESS RELATING TO SUCH ACTION OR PROCEEDING BY DELIVERY THEREOF TO IT BY HAND OR BY MAIL IN THE MANNER PROVIDED FOR IN THIS NOTE. DEBTOR HEREBY EXPRESSLY AND IRREVOCABLY WAIVES ANY CLAIM OR DEFENSE IN ANY SUCH ACTION OR PROCEEDING BASED ON ANY ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS OR ANY SIMILAR BASIS. DEBTOR SHALL NOT BE ENTITLED IN ANY SUCH ACTION OR PROCEEDING TO ASSERT ANY DEFENSE GIVEN OR ALLOWED UNDER THE LAWS OF ANY STATE OTHER THAN THE STATE OF NEW YORK UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW YORK. NOTHING IN THIS AGREEMENT SHALL AFFECT OR IMPAIR IN ANY MANNER OR TO ANY EXTENT THE RIGHT OF SECURED PARTY TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST DEBTOR IN ANY JURISDICTION OR TO SERVE PROCESS IN ANY MANNER PERMITTED BY LAW.

9.12 Waiver of Jury Trial. DEBTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY AGREEMENT, INSTRUMENT OR DOCUMENT EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR THEREWITH.

9.13 Notice. Any notice required hereunder shall be in writing, and shall be deemed to have been validly served when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, such as Federal Express or United Parcel Service, with proper postage prepaid, or when deposited in the United States mail, as first class, certified or registered mail postage prepaid, and addressed to the party to be notified at the address of such party set forth in this Note; provided, however, that notice to the Secured Party shall be deemed given only upon actual receipt. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Debtor agrees to keep Secured Party informed at all times of Debtor's current address.

9.14 Complete Agreement. This Note, the Schedule(s), Riders, and the other agreements, instruments and documents referred to herein are the complete agreement of the parties with respect to the subject matter hereof and thereof and each of which may be executed in counterparts.

9.15 Sections Titles. The Section titles contained in this Note are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

IN WITNESS WHEREOF, this Note has been duly executed as of the ________ day of 06/29/2022, ____.

| | |
|---|---|
| Debtor: DB Transports LLC | Secured Party: **Santander Bank, N.A.** |
| By :**X** DocuSigned by: Donshekie Barrett 5AB...47E... | By: DocuSigned by: Michael J Paez 5A5455C3B45F40E... |
| Title: member | Title: Senior Vice President |



Confidential

DocuSign Envelope ID:

# GUARANTY

THIS GUARANTY OF PAYMENT AND PERFORMANCE dated 06/29/2022 (this "Guaranty"), by the undersigned (collectively and individually referred to herein as the "Guarantor"), in favor of **Santander Bank, N.A.** (together with each of its Affiliates, as defined below, collectively "Secured Party") having an office at 3 Huntington Quadrangle Suite 101N, Melville, NY 11747, on behalf of DB Transports LLC, having an address of 5043 Fairbury Way Diberville, Mississippi 39540, and its Affiliates (together with each of its Affiliates, collectively, "Debtor").

1. Definitions. As used herein:

(a) "Affiliate" shall mean any corporation, partnership, person or other entity that now or hereafter directly or indirectly controls, is controlled by, or is under common control with, the referenced person or entity.

(b) "Liabilities" means any and all obligations of any kind owing from Debtor to Secured Party or its Affiliates, whether direct or indirect, absolute or contingent, joint, several or independent, now existing or hereafter arising, due or to become due, or created directly or acquired by Secured Party by assignment or otherwise and including, without limitation, all fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees and costs and expenses paid or incurred by the Secured Party in: (i) endeavoring to collect all or any part of the obligations from, or in prosecuting any action against, the Debtor and/or Guarantor; (ii) taking any action with respect to any security or collateral securing the obligations of the Debtor, and/or Guarantor under this Guaranty; and (iii) preserving, protecting or defending the enforceability of this Guaranty or its rights hereunder as well as pursuant to:

(1) each and every (A) Promissory Note and Security Agreement (the "Note") and any related Riders thereto (including without limitation any Open-End and other Purchase Option Riders) now or hereafter entered into by Secured Party with Debtor, (B) agreement relating to any security therefor, and (C) other lease, loan and/or sale (on credit or otherwise) of a motor vehicle (and any related accessories) and/or of any other equipment or goods now or hereafter entered into by Secured Party with Debtor; and

(2) any and all other notes, leases, loans, credits, financial accommodations and/or other agreements or transactions now or hereafter entered into by Secured Party or its Affiliates with Debtor;

all at such times, in such amounts, upon such terms and conditions and with or without such security, as Secured Party may in its sole discretion deem desirable, and with or without notice to or consent from Guarantor (collectively, "Agreements").

2. Guaranty of Payment and Performance. To induce Secured Party to enter, in its sole discretion, into one or more Agreements, Guarantor hereby unconditionally, absolutely and irrevocably guarantees the full and punctual payment and performance by Debtor of all of the Liabilities.

3. Agreements of Guarantor. Guarantor agrees that: (a) Secured Party may, at any time and from time to time (whether before or after revocation or termination of this Guaranty), without notice to and without incurring any responsibility whatsoever to Guarantor and without impairing or releasing any of the obligations of Guarantor hereunder, and upon or without any terms or conditions, and either in whole or in part: (i) change the manner, place or terms of payment of any of the Liabilities, including (without limitation) any increase or decrease in rent and/or other installment payments and/or any interest rate adjustments, and/or change or extend the time of payment or performance of, or renew, amend, alter, or restate, any of the Liabilities, or any security therefor, or any other liability incurred directly or indirectly in respect thereof, or make any other change in the Liabilities or consent to any change in Debtor itself, and this Guaranty shall apply to the Liabilities as so changed, extended, renewed, amended, altered or restated; (ii) take additional security for or sell, exchange, release, surrender, substitute, realize upon or otherwise deal with in any manner and in any order (A) any property at any time pledged or mortgaged by any entity or person to secure any of the Liabilities or any other liabilities (including without limitation, any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or (B) any set-off thereagainst; (iii) exercise or refrain from exercising any rights against Debtor or others (including, without limitation, Guarantor) or otherwise act or refrain from acting; (iv) settle or compromise any Liability, any security therefor, or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or subordinate the payment of any of the Liabilities (whether due or not) to liabilities of creditors of Debtor other than Secured Party and Guarantor; (v) apply any sums paid by any entity or person (regardless of how realized) to the payment of any Liability, regardless of what Liabilities remain unpaid; (vi) cancel, compromise, modify, amend, restate or waive the provisions of any document relating to any Liabilities; (vii) release one or more of the entities or persons constituting Guarantor hereunder or any other guarantor or surety of any or all of the Liabilities; and (viii) grant Debtor any indulgence as Secured Party may, in its sole discretion, determine; (b) no payment by Guarantor except payment in full of all Liabilities shall entitle Guarantor to be subrogated to any of the rights of Secured Party; and (c) Guarantor shall have no right of reimbursement, subrogation or indemnity against Debtor whatsoever, and no right of recourse to or with respect to any assets of Debtor or any security for the Liabilities, unless and until the Liabilities have been indefeasibly paid in full.

4. Certain Waivers and Consents and Covenants.

(a) Guarantor covenants that this Guaranty will not be discharged, except by full, complete and indefeasible payment of the Liabilities in full and in furtherance of such covenants hereby irrevocably and unconditionally waives:

(1) any requirement of diligence, demand of payment or any other demand whatsoever, filings of claims with a court in the event of receivership or bankruptcy of Debtor, presentment, notice of dishonor and protest, notice of any default by Debtor or of any sale or other dealing of any kind with any security for any Liability, the benefit of any statutes of limitation, and any other notice to which Guarantor might otherwise be entitled; and

(2) the right to interpose in any action on this Guaranty any claim, counterclaim, defense, set-off or other right of any kind (including, without limitation, the right to consolidate with such action any other action), or any statute of limitation affecting its liability hereunder or the enforcement hereof.

(b) Guarantor consents to the non-perfection, waiver, lapse, subordination, assignment, full or partial release or other disposition of, or any other dealing with, any rights, security interests, pledges, hypothecations, chattel mortgages or liens at any time granted to Secured Party as security for any of the Liabilities.

(c) Guarantor shall furnish to Secured Party such annual financial statements as Secured Party shall from time to time request.

5. Subordination; No Enforcement. The payment and enforcement of any and all present and future debts and obligations of any kind of Debtor to Guarantor (and any security therefor) are hereby postponed in favor of and subordinated to the full payment and performance of all of the Liabilities, and such debts and obligations are hereby assigned and transferred to Secured Party as security for the obligations of Guarantor hereunder. Guarantor shall from time to time promptly execute such instruments and documents (including but not limited to Uniform Commercial Code financing statements) to evidence such assignment and transfer as Debtor may request. Guarantor agrees that it shall not accept or receive any security, payment or other thing of value from Debtor or exercise any right against Debtor or its assets without obtaining the prior written consent of Secured Party.



Confidential

6. Reinstatement. If any payment on the Liabilities that was received by Secured Party from any source is revoked, set aside or required to be repaid, whether in connection with a bankruptcy or insolvency proceeding or otherwise, (a) this Guaranty shall remain in full force and effect (or, if previously terminated, be fully reinstated) until Secured Party has received full and final payment of all of the Liabilities, and (b) Guarantor shall immediately pay to Secured Party the amount of any such payment upon demand.

7. Transfer of Assets. Guarantor agrees that it will not transfer any of its assets to any entity or person (except gifts of nominal value) without first obtaining full and valuable consideration (on a disinterested third-party basis) for each such transfer.

8. Enforcement. This Guaranty is a guaranty of payment and not of collection and Guarantor hereby waives the right to require that (a) any action be brought first against Debtor or any other guarantors or any security, or (b) resort be made at any time to any security or to any security deposit held by Secured Party. Secured Party may enforce any or all Liabilities from time to time without resorting first to any other right, remedy or security. All Liabilities shall, unless paid in full, survive any repossession of any security therefor or of any motor vehicle or equipment or other goods sold or leased pursuant thereto, irrespective of whether such action constitutes an election of remedies against Debtor. Guarantor shall, upon demand, pay or reimburse Secured Party for all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred or paid by Secured Party in enforcing any of its rights or remedies with respect to this Guaranty or any Liabilities.

9. Continuing Guaranty. This Guaranty: (a) may not be terminated or changed orally and no provision hereof may be modified or waived except in writing by Secured Party in accordance with the notice provision set forth in section 11 below; (b) shall continue in full force and effect until Secured Party receives written notice of termination from Guarantor, except that no such termination shall release or affect in any way Guarantor's liability under this Guaranty with respect to any Liabilities created or incurred prior to Secured Party's receipt of such notice, and any extensions, modifications, consolidations, restatements, renewals or refinancings of such Liabilities; and (c) shall be binding upon Guarantor, jointly and severally if more than one, and its, his, her or their respective heirs, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

10. Assignment. This Guaranty is assignable by Secured Party from time to time in whole or in part in conjunction with the transfer or assignment of, or the grant of a security interest in, Secured Party's interest in any Agreement, and any such assignment of this Guaranty shall vest in the assignee the rights and powers (in whole or in part, as appropriate) herein conferred upon and granted to Secured Party. Guarantor agrees from time to time: (a) in connection with any such assignment, to provide such instruments, documents, acknowledgments and further assurances as Secured Party or any assignee may deem necessary or advisable to effectuate the purposes of this Guaranty and any such assignment, with respect to such matters as the validity and enforceability this Guaranty, Guarantor's obligations to such assignee and such other matters as may be reasonably requested; and (b) that after receipt by Guarantor of written notice of such an assignment from Secured Party or from any assignee, all amounts which are then and thereafter due under this Guaranty shall unconditionally be paid to such assignee as directed in such notice.

11. Notices. Any notices required or permitted to be given hereunder shall be deemed have been served when actually delivered, when received by confirmed facsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier with proper postage prepaid, or when deposited in the United States mail, as first class, certified or registered mail, postage prepaid, and addressed to the party to be notified at the address of such party set forth in this Guaranty; provided, however, that notice to the Secured Party shall be deemed given only upon actual receipt.

12. Jurisdiction; Service of Process. **GUARANTOR IRREVOCABLY SUBMITS TO THE JURISDICTION AND VENUE OF ALL FEDERAL AND STATE COURTS LOCATED IN SUFFOLK COUNTY, NEW YORK IN ANY ACTION OR PROCEEDING BROUGHT ON THIS GUARANTY (IF SECURED PARTY CHOOSES TO BRING SUCH ACTION OR PROCEEDING IN NEW YORK), AND GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS (OR A JUDGE THEREOF) IN ANY SUCH ACTION OR PROCEEDING SHALL BE DULY SERVED IF SENT TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH AT THE BEGINNING OF THIS GUARANTY (AND SERVICE SO MADE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID). THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW. GUARANTOR HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT ON OR RELATING TO THIS GUARANTY.**

13. Severability. The invalidity or unenforceability of any portion of this Guaranty shall not affect the validity or enforceability of the remaining portions of this Guaranty.

14. No Material Misstatements. To the best of the Guarantor's knowledge, no information contained in this Guaranty, or any other credit documents, or any written statement furnished by or on behalf of Guarantor, Debtor or any other party pursuant to the terms of any of the foregoing contains any untrue statement of a material fact or omits to state a material fact necessary to make any material statements contained herein or therein not misleading in light of the circumstances under which they were made. To the best of Guarantor's knowledge, there is no fact or circumstance presently known to the Guarantor which has not been disclosed to Secured Party and which materially adversely affects, or is reasonably likely to materially adversely affect, Debtor, the Obligations or any collateral therefor, Guarantor or Debtor's or Guarantor's business, operations or condition (financial or otherwise).

15. Miscellaneous. If more than one Guarantor is named below, or if any Guarantor executes any other Guaranty with respect to the Liabilities, the liabilities and obligations of each Guarantor hereunder or thereunder shall be joint and several with each other Guarantor. Section headings in this Guaranty are for convenience of reference only and shall not alter or affect the meaning or interpretation hereof. Guarantor is not a person (i) whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (ii) who engages in any dealings or transactions prohibited by Section 2 of such executive order, or, to its knowledge, is otherwise associated with any such person in any manner violative of Section 2, or (iii) on the list of Specially Designated Nationals and Blocked Persons or subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order. Nothing contained herein shall constitute an obligation of Secured Party to act or refrain from taking any action.

This Guaranty has been duly executed by Guarantor as of the date set forth above.

DocuSigned by:
Donshekie Barrett
5ABC70C6046B47E...

(X): ______________________ / NO TITLE
Donshekie Barrett
5043 Fairbury Way
Diberville MS 37129
Telephone No.
E-mail:

(X): ______________________ / NO TITLE
Telephone No.
E-mail:

(X): ______________________ / NO TITLE
Telephone No.
E-mail:

(X): ______________________ / NO TITLE
Telephone No.
E-mail:



Confidential

DocuSign Envelope ID:

**SCHEDULE NO** 000 **OF PROMISSORY NOTE AND SECURITY AGREEMENT NO.** 002-0028406

Dated 06/29/2022 between **SANTANDER BANK, N.A. ("Secured Party")** and:
DB Transports LLC **(**"Debtor")
General purpose for which Collateral listed herein is/are to be used:

| Year | Make/Model | Vehicle/Equipment ID # | Body & Additional Equipment with serial number | Loan Amount | Initial Payment | Monthly Payment | Rem Pymts | Residual Value |
|---|---|---|---|---|---|---|---|---|
| 2020 | Peterbilt 389 | 1NPXLP9X0LD718328 | | 160595.00 | | 2777.00 | | 0.00 |
| 2021 | Trailer Cottrell CX-09LSFA3 | 5E0AA1643MG555801 | | 95000.00 | | 1643.00 | | 0.00 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | TOTALS | 255595.00 | 0.00 | 4420.00 | 72 | 0.00 |

PRINCIPAL BUSINESS ADDRESS: 5043 Fairbury Way Diberville, Mississippi 39540

BILLING ADDRESS: 5043 Fairbury Way Diberville MS 39540

GARAGING ADDRESS: 3586 Sangani Blvd Ste L307 D'IBERVILLE MS 39540

Effective this _______day of 06/29/2022, _____, this Schedule is hereby made a part of Promissory Note and Security Agreement No. 002-0028406 (the "Note"), dated ___________ between the parties hereto (and shall be in addition to any Schedule) now attached to said Note. Capitalized terms contained herein and not otherwise defined shall have the meanings ascribed to such terms in the Note.

Debtor: DB Transports LLC
DocuSigned by:
By :**X** Donshekie Barrett
5ABC70C6046B47E...
Name: Donshekie Barrett
Title: member

Secured Party: **Santander Bank, N.A.**
DocuSigned by:
By: Michael J Paez
5A5455C3B45F40E...
Name: Michael J Paez
Title: svp



Initials: DB

VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER

1NPXL49X2**PD794086** 2023 PTRB AA TR **17901477936**

DATE OF FIRST SECURITY INTEREST 12-27-2024

FIRST LIENHOLDER CODE

**FIRST COMMERCE LLC**
**155 B AVE STE 300**
**LAKE OSWEGO OR 97034-3181**

FIRST LIEN RELEASED BY

SIGNATURE RELEASE DATE

**FIRST COMMERCE LLC**
**155 B AVE STE 300**
**LAKE OSWEGO OR 97034-3181**

**STATE OF TENNESSEE**
**DEPARTMENT OF REVENUE**

# STATE OF TENNESSEE

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE DOCUMENT. BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

** DUPLICATE ** **CERTIFICATE OF TITLE** ** DUPLICATE **

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| 1NPXL49X2PD794086 | 2023 | PTRB | AA | TR | 17901477936 |

| NEW USED DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|
| X | 17901457429 | TN | | 79 | |

DATE TITLE ISSUED 07-22-2025 REMARKS DUPLICATE TITLE

DATE VEHICLE ACQUIRED 09-21-2022

**DB TRANSPORTS LLC**
**4221Q OLD FORT PKWY 334**
**MURFREESBORO TN 37128**

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN SUBMITTED UNDER TENNESSEE CODE ANNOTATED, 55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED ABOVE IS VESTED IN THE OWNER'S NAME HEREIN. THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED FOR SAID MOTOR VEHICLE.

FIRST LIEN RELEASED BY

SIGNATURE RELEASE DATE

DATE OF FIRST SECURITY INTEREST 12-27-2024

FIRST LIENHOLDER CODE

**FIRST COMMERCE LLC**
**155 B AVE STE 300**
**LAKE OSWEGO OR 97034-3181**

45439538

RV-F1318101 REV 12/14

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO SEE THE MARK.

STATE OF TENNESSEE

## STATE OF TENNESSEE
## LIEN SATISFACTION

Tennessee Code Annotated section 55-3-114 provides that upon satisfaction of a lien, the lienholder shall within seventy-two (72) hours from the date of discharging the lien notify the Tennessee Department of Revenue of the discharge of this lien by registered mail with return receipt requested. To notify the department, complete the space provided on the Certificate of Title and the Lien Satisfaction on the reverse side of this form. Failure to comply is a class C misdemeanor, 55-3-127.

Detach the completed Lien Satisfaction Form and mail the form to the department at the address indicated below.

If there are additional liens indicated on the title, you will forward the title to the second lienholder. If there are no additional liens indicated on the title, you will forward the title to the owner within seven (7) business days from the date of discharging the lien.

The mailing address for forwarding the Lien Satisfaction Form is as follows:

STATE OF TENNESSEE
DEPARTMENT OF REVENUE
VEHICLE SERVICES DIVISION
500 DEADERICK STREET
NASHVILLE, TN 37242

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

FEDERAL and STATE LAW requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

### ASSIGNMENT OF TITLE BY REGISTERED OWNER

This is to be completed by the seller and delivered to the purchaser with the vehicle. Purchaser must make application for a new Certificate of Title with the County Clerk. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths)
☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) ____

SELLER(S) NAME (Hand Printed) ____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE ____ SIGNATURE OF BUYER(S) ____

SALES PRICE ____ BUYER(S) NAME (Hand Printed) ____

Make, VIN, Value of trade-in ____

**LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:**
1ST LIEN IN FAVOR OF
NAME & ADDRESS ____

### FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths)
☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) ____

SELLER(S) NAME (Hand Printed) ____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE ____ SIGNATURE OF BUYER(S) ____

SALES PRICE ____ BUYER(S) NAME (Hand Printed) ____

Make, VIN, Value of trade-in ____

State Sales Tax ____ Local Option Tax ____

**LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:**
1ST LIEN IN FAVOR OF
NAME & ADDRESS ____

### SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths)
☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) ____

SELLER(S) NAME (Hand Printed) ____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE ____ SIGNATURE OF BUYER(S) ____

SALES PRICE ____ BUYER(S) NAME (Hand Printed) ____

Make, VIN, Value of trade-in ____

State Sales Tax ____ Local Option Tax ____

**LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:**
1ST LIEN IN FAVOR OF
NAME & ADDRESS ____

WHEN FULL, CONTINUE ON TITLE EXTENSION FORM.

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| 5E0AA1649PG831001 | 2023 | COTC | CX0 | SE | 17901477823 |

DATE OF FIRST SECURITY INTEREST 12-27-2024

FIRST LIENHOLDER CODE

**FIRST COMMERCE LLC**
**155 B AVE STE 300**
**LAKE OSWEGO OR 97034-3181**

FIRST LIEN RELEASED BY

SIGNATURE RELEASE DATE

**FIRST COMMERCE LLC**
**155 B AVE STE 300**
**LAKE OSWEGO OR 97034-3181**

**STATE OF TENNESSEE**
**DEPARTMENT OF REVENUE**

# STATE OF TENNESSEE

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE DOCUMENT. BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

** DUPLICATE ** **CERTIFICATE OF TITLE** ** DUPLICATE **

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| 5E0AA1649PG831001 | 2023 | COTC | CX0 | SE | 17901477823 |

| NEW USED DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|
| X | 17901457425 | TN | | 79 | |

DATE TITLE ISSUED 07-22-2025 REMARKS DUPLICATE TITLE

DATE VEHICLE ACQUIRED 09-14-2022

**DB TRANSPORTS LLC**
**2441Q OLD FORT PKWY # 334**
**MURFREESBORO TN 37128-4162**

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN SUBMITTED UNDER TENNESSEE CODE ANNOTATED, 55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED ABOVE IS VESTED IN THE OWNER'S NAME HEREIN. THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED FOR SAID MOTOR VEHICLE.

FIRST LIEN RELEASED BY

SIGNATURE RELEASE DATE

DATE OF FIRST SECURITY INTEREST 12-27-2024

FIRST LIENHOLDER CODE

**FIRST COMMERCE LLC**
**155 B AVE STE 300**
**LAKE OSWEGO OR 97034-3181**

45439818

RV-F1318101 REV 12/14

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO SEE THE MARK.

STATE OF TENNESSEE

STATE OF TENNESSEE
LIEN SATISFACTION

Tennessee Code Annotated section 55-3-114 provides that upon satisfaction of a lien, the lienholder shall within seventy-two (72) hours from the date of discharging the lien notify the Tennessee Department of Revenue of the discharge of this lien by registered mail with return receipt requested. To notify the department, complete the space provided on the Certificate of Title and the Lien Satisfaction on the reverse side of this form. Failure to comply is a class C misdemeanor, 55-3-127.

Detach the completed Lien Satisfaction Form and mail the form to the department at the address indicated below.

If there are additional liens indicated on the title, you will forward the title to the second lienholder. If there are no additional liens indicated on the title, you will forward the title to the owner within seven (7) business days from the date of discharging the lien.

The mailing address for forwarding the Lien Satisfaction Form is as follows:

STATE OF TENNESSEE
DEPARTMENT OF REVENUE
VEHICLE SERVICES DIVISION
500 DEADERICK STREET
NASHVILLE, TN 37242

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

FEDERAL and STATE LAW requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

**ASSIGNMENT OF TITLE BY REGISTERED OWNER**

This is to be completed by the seller and delivered to the purchaser with the vehicle. Purchaser must make application for a new Certificate of Title with the County Clerk. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths)
- ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) ______

SELLER(S) NAME (Hand Printed) ______ "I am aware of the above odometer certification made by the seller."

DATE OF SALE ______ SIGNATURE OF BUYER(S) ______

SALES PRICE ______ BUYER(S) NAME (Hand Printed) ______

Make, VIN, Value of trade-in ______

**LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:**
1ST LIEN IN FAVOR OF
NAME & ADDRESS ______

**FIRST RE-ASSIGNMENT BY LICENSED DEALER**

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths)
- ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) ______

SELLER(S) NAME (Hand Printed) ______ "I am aware of the above odometer certification made by the seller."

DATE OF SALE ______ SIGNATURE OF BUYER(S) ______

SALES PRICE ______ BUYER(S) NAME (Hand Printed) ______

Make, VIN, Value of trade-in ______

State Sales Tax ______ Local Option Tax ______

**LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:**
1ST LIEN IN FAVOR OF
NAME & ADDRESS ______

**SECOND RE-ASSIGNMENT BY LICENSED DEALER**

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths)
- ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
- ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) ______

SELLER(S) NAME (Hand Printed) ______ "I am aware of the above odometer certification made by the seller."

DATE OF SALE ______ SIGNATURE OF BUYER(S) ______

SALES PRICE ______ BUYER(S) NAME (Hand Printed) ______

Make, VIN, Value of trade-in ______

State Sales Tax ______ Local Option Tax ______

**LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:**
1ST LIEN IN FAVOR OF
NAME & ADDRESS ______

WHEN FULL, CONTINUE ON TITLE EXTENSION FORM.